753 So.2d 456 (1999)
R. James YOUNG, Interim Successor Trustee of Clinton Gilliam Rotenberry Trust, Appellant,
v.
William Lamar HOOKER, Appellee.
Nos. 1998-CA-01270-COA, 1998-CA-01272-COA.
Court of Appeals of Mississippi.
November 16, 1999.
*457 Janet McMurtray, Alan W. Perry, E. Stephen Williams, Michael D. Simmons, Jackson, Attorneys for Appellant.
James Lawton Robertson, Jackson, Attorney for Appellee.
BEFORE McMILLIN, C.J., MOORE, AND THOMAS, JJ.
*458 MOORE, J., for the Court:
¶ 1. The Chancery Court of Quitman County dismissed two civil actions arising from a 1982 judgment against Appellee William Lamar Hooker. The chancellor dismissed Appellant R. James Young's complaint to renew a judgment for Young's failure to serve process within 120 days from the filing of the complaint and extinguished the judgment sought to be renewed for Young's failure to renew the judgment within the statute of limitations. Young appeals the judgment of the Quit-man County Chancery Court, citing one error as follows
WHETHER GOOD CAUSE EXISTED FOR THE TRUSTEE'S INABILITY TO SERVE PROCESS ON THE APPELLEE WITHIN 120 DAYS IN AN ACTION TO RENEW A JUDGMENT
We affirm.

STATEMENT OF FACTS
¶ 2. March 21, 1989, B.E. Grantham, Jr., former trustee for the Clinton Gilliam Rotenberry Trust ("Gilliam Trust") and the Clinton Grice Rotenberry Residual Trust ("Grice Residual Trust") obtained a default judgment against Appellee William Lamar Hooker for $743,170.71 plus interest. The judgment, entered in Quitman County Chancery Court Case No. 11,175, was a renewal of a 1982 judgment, bearing the same case number, against Hooker in the Gilliam Trust's and Grice Residual Trust's favor.
¶ 3. March 6, 1996, Appellant R. James Young, the Gilliam Trust's successor trustee, filed a complaint to renew the 1989 judgment against Hooker, under Quitman County Chancery Court case number 96-38. The chancery clerk issued process to Hooker on the same date that the complaint was filed; however, Hooker was not served with process until May 8, 1998, more than two years later. In November 1997, Young filed a motion to examine judgment debtor. November 18, 1997, the chancery court signed an order for examination of judgment debtor which Young attempted to serve upon Hooker at 1350 Linden Place in Jackson, Mississippi. Young also attempted to serve Hooker at 310 Natchez Street in Kosciusko, Mississippi.[1] Having failed to serve Hooker at either of these addresses, Young gave up, no longer wishing to expend trust resources to find Hooker. Young did not request any extensions of time from the chancery court within which to serve process.
¶ 4. Upon learning that Hooker would be having lunch with Clint Rotenberry, Jr., one of the Gilliam Trust's beneficiaries and the trustee of the Guice Residual Trust, Young had Hooker served with the order to examine judgment debtor on February 9, 1998. Hooker moved to set aside this order and on May 8, 1998 the chancery court held a hearing on Hooker's motion. Young served Hooker with the summons and complaint to renew the judgment at the May 8 hearing. At the hearing, the trial judge heard testimony upon which he later based his decision to dismiss the suit to renew the 1989 judgment and his decision to extinguish the 1989 judgment itself.
¶ 5. Clint Rotenberry, Jr., testified that neither the trustee nor the trustee's lawyer ever mentioned their inability to find Hooker or requested his help in finding Hooker. He knew that Hooker spent many nights at Julie Harvey's residence, from 1996 until her death on February 5, 1997, that Hooker often answered Harvey's telephone, and he had seen Hooker at Harvey's house.[2] He had two telephone *459 numbers for Hooker, one at Harvey's home and one at Gayle Steele's home in Kosciusko, even though Hooker did not have a listed telephone number. Rotenberry asserted that he could always reach Hooker by telephone within a three-day period and that Hooker always returned calls when Rotenberry left messages for him.
¶ 6. In response to the court's inquiry, Rotenberry testified: "I would have to say that it's my belief that it was common knowledge to everybody where Lamar was."[3] He recalled that, when he told Hooker on February 8, 1998 that counsel for the Gilliam Trust was experiencing difficulty in serving him with process, Hooker told him to inform the attorney that he would be at Hal & Mal's restaurant in Jackson between 11:30 a.m. and 12:30 p.m. the following day. Rotenberry noted that Hooker did not dodge process on that day.
¶ 7. Scottye Rotenberry Hooker testified that there had been no time since her divorce from Hooker in 1981 that she had not known where he could be found. She emphasized that she would have aided Young or the attorneys in every way to find Hooker because she wanted to keep the judgment. She provided the Gilliam Trust's attorney with the Linden Place address. Ms. Hooker testified that she was never informed that Young could not find Hooker at Linden Place, and that she received no further requests regarding Hooker's whereabouts.
¶ 8. Ms. Hooker explained that Hooker told her, in February of 1997, that the judgment had not been renewed. She wanted the judgment renewed even though she had been told that the judgment "wasn't worth anything." She testified that she confirmed the Kosciusko address at Young's request shortly before the May 8, 1998 hearing, and she observed that the process server obviously identified the wrong house in Kosciusko. In response to Hooker's assertion that she knew his whereabouts ever since the judgment was obtained against him, Ms. Hooker explained that she could learn his location from their children and that she knew his habits. She stated: "I have to admit I've always known where you were, or I could have found you in a matter of days." Ms. Hooker testified that she knew that Hooker had moved in with Julie Harvey fairly soon after he moved in.
¶ 9. June 1, 1998, in Case Number 96-38, Hooker filed a motion to dismiss Young's complaint to renew the 1989 judgment upon the ground that process was not served within 120 days of the filing of the complaint, as required by M.R.C.P. 4(h). Hooker also moved the chancery court, in Case Number 11,175, to vacate and set aside the 1989 judgment upon the ground that the judgment was extinguished by operation of Miss.Code Ann. § § 15-1-3 and 15-1-43 (Rev.1995).
¶ 10. On July 20, 1998, pursuant to his written opinion dated July 9, 1998, the chancellor entered his order for dismissal in both cases 96-38 and 11,175. The chancellor decreed that the 1996 complaint should be dismissed for Young's failure to serve process within the 120-day period. The chancellor ruled that the evidence revealed that Hooker's whereabouts were either known or easily ascertained; therefore, there was no good cause for the delay in serving Hooker with the complaint in the suit to renew. The chancellor further decreed that the rights held by the trustee under the 1989 judgment, and any remedies to which the trustee was entitled under the 1989 judgment, were "finally defeated, extinguished, and barred" by operation of Miss.Code Ann. § § 15-1-3 and 15-1-43 (Rev.1995).
*460 ¶ 11. Young timely filed and perfected his appeal of the July 20 order and the two cases have been consolidated for purposes of appeal by order of the supreme court entered on September 18, 1998.

LAW AND ANALYSIS

DID THE CHANCELLOR ERR IN FINDING NO GOOD CAUSE FOR YOUNG'S FAILURE TO SERVE PROCESS WITHIN 120 DAYS OF FILING THE COMPLAINT?

I. Statute of Limitations and Service of Process
¶ 12. In Mississippi a judgment has a life of seven years, provided as follows:
All actions founded on any judgment or decree rendered by any court of record in this state, shall be brought within seven years next after the rendition of such judgment or decree, and not after, and an execution shall not issue on any judgment or decree after seven years from the date of the judgment or decree.
Miss.Code Ann. § 15-1-43 (Rev.1995).
¶ 13. The running of the seven-year statute of limitations not only defeats and extinguishes any remedy of the judgment creditor, but also defeats and extinguishes the right itself, the debt in the present case. Miss.Code Ann. § 15-1-3 (Rev.1995). "The effective method to extend the judgment lien is by filing another suit upon the judgment before the expiration of [seven] years from the date of the rendition thereof." Kimbrough v. Wright, 231 Miss. 855, 857, 97 So.2d 362, 363 (1957).
¶ 14. Once a complaint is filed, the plaintiff must serve process in accordance with M.R.C.P. 4. M.R.C.P. 4(h) governs the time period in which process must be served:
(h) Summons: Time Limit for Service. If a service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint and the party on whose behalf such service was required cannot show good cause why such service was not made within that period, the action shall be dismissed as to that defendant without prejudice upon the court's own initiative with notice to such party or upon motion.
The filing of a complaint tolls the statute of limitations for the 120-day period prescribed in M.R.C.P. 4(h). Erby v. Cox, 654 So.2d 503, 505 (Miss.1995). This includes complaints to renew judgments, and the timely filing of a complaint to renew a judgment tolls the seven-year statute of limitations for 120 days regardless of when process is served. Watters v. Stripling, 675 So.2d 1242, 1244 (Miss.1996). If the 120-day period expires without process having been served, the limitations period begins to run again unless the complainant shows good cause for the delay. Id. Good cause means, at least, excusable neglect. Id. (citing Peters v. United States, 9 F.3d 344, 345 (5th Cir.1993)).
¶ 15. The judgment sought to be renewed against Hooker was dated March 21, 1989. Young filed the complaint to renew the judgment thirteen days before the running of the seven-year statute of limitations.[4] Process was not served within the 120-day period, and Young filed no extensions of time within which to serve process; therefore, the seven-year limitations period began running again on July 6, 1996, 120 days from the date the complaint was filed. The seven-year limitations period expired fifteen days later. The only way Young could prevent dismissal of his case by operation of M.R.C.P. 4(h), was to show good cause for his failure *461 to serve process within 120-day period. As stated above, the chancellor was unmoved by Young's assertion of good cause, leaving this Court with the task of reviewing the chancellor's finding.

II. Standard of Review
¶ 16. Generally, Mississippi courts apply the "manifest error/substantial evidence rule" in reviewing the chancellor's findings of fact. Mississippi State Tax Comm'n v. Oscar E. Austin Trust, 719 So.2d 1172, 1173(¶ 7) (Miss.1998). The reviewing court is prohibited from disturbing the chancellor's findings of fact unless they are "manifestly wrong or clearly erroneous." Bowers Window and Door Co., Inc. v. Dearman, 549 So.2d 1309, 1312-13 (Miss.1989). Thus, the chancellor's findings of fact are accorded great deference and will not be disturbed if they are supported by substantial evidence. Brooks v. Brooks, 652 So.2d 1113, 1124 (Miss.1995). In contrast, questions of law are reviewed de novo, and the reviewing court will reverse if the law has been applied or interpreted erroneously. Mississippi Transp. Comm'n v. Fires, 693 So.2d 917, 920 (Miss. 1997).
¶ 17. In reviewing a determination of "good cause" under M.R.C.P. 4(h), the Mississippi Supreme Court has specifically provided that the decision "would be a discretionary ruling on the part of the trial court and entitled to deferential review of whether the trial court abused its discretion and whether there was substantial evidence supporting the determination." Rains v. Gardner, 731 So.2d 1192, 1197 (¶ 18) (Miss.1999). In Rains, the court cited In re Estate of Ware, 573 So.2d 773, 775-76 (Miss.1990), noting that the appellate court's review is "plenary" if the trial judge's decision on a motion for an extension of time is based upon "precept of law," while the abuse of discretion standard applies otherwise. Rains, 731 So.2d at 1198 (¶ 19). Therefore, the appropriate standard depends on the trial judge's reasoning and must be determined on a case by case basis. Id.
¶ 18. In the case sub judice, as in Rains and Ware, the chancellor based his decision to dismiss the complaint to renew the 1989 judgment on a finding of fact rather than a precept of law. The Rains court found no abuse of discretion where the trial court's finding of lack of good cause was supported by "sufficient and substantial evidence." Id. at 1198 (¶ 20). Therefore, we will not reverse if the chancellor's finding of no good cause is supported by substantial evidence. The chancellor's dismissal of the 1989 judgment was based on his legal finding that the statute of limitations had lapsed. We will review this finding of law de novo.

III. Application of the Law
¶ 19. In his written opinion, the chancellor ruled that the evidence revealed that Hooker's whereabouts were either known or easily ascertained; therefore, there was no good cause for the delay in serving Hooker with the suit to renew the 1989 judgment. The chancellor observed that Hooker lived at the home, owned by the Gilliam Trust, of Julie Harvey during part of the time after the complaint was filed. The chancellor further noted that Hooker's former wife testified that she could find Hooker "within two or three days." Further, the chancellor found that Young presented no evidence that Hooker deliberately attempted to avoid service of process. Upon reviewing the record, we find that substantial evidence supports the chancellor's finding of no good cause.
¶ 20. Specifically, the evidence supports the chancellor's determination that "the Defendant's whereabouts either were known, should have been known or could have easily been known" to Young. The record reveals that Young's efforts to locate Hooker were limited. The record contains substantial evidence that Young knew people, beneficiaries of the Trusts, whom he could have questioned about Hooker's location. Despite the beneficiaries' *462 attested willingness to help locate Hooker, Young failed to explain why he needed to find him or to request the beneficiaries' aid in locating him.
¶ 21. A comparison of the present case to Fortenberry v. Memorial Hosp. at Gulfport, Inc., 676 So.2d 252 (Miss.1996), does not compel reversal of the chancellor's good cause finding as urged by Young. In that case the Mississippi Supreme Court determined that good cause existed for failure to serve process within 120 days where the defendant moved, leaving no forwarding address. Fortenberry made "extensive efforts to locate and serve" the defendant, Mitchell, whose whereabouts were known to only a few people or agencies. Id. at 256. Fortenberry requested, and was granted, two extensions of time and subsequently requested the court's assistance in locating Mitchell. Id. at 254. After numerous unsuccessful efforts, including inquiring with hospitals and the state medical licensing board as to Mitchell's whereabouts, the plaintiff hired a private investigator to locate Mitchell. Id. at 256. Finally, Fortenberry located Mitchell and served him with process approximately ten months after filing the complaint. Id.
¶ 22. In contrast, evidence in the case sub judice reveals that Young did not serve process on the complaint to renew judgment for more than two years after filing. He never requested an extension of time from the court, and he failed to communicate with trust beneficiaries who knew where to find Hooker. Young obtained an address from Scottye Rotenberry Hooker, but after the process server discovered that Hooker had moved from that address, he did not pursue the matter further by asking Ms. Hooker or other trust beneficiaries for other locations where Hooker might be found. Instead, Young determined that it would be wasteful to expend trust funds to continue searching for Hooker. Consequently, he waited until more than two months after Hooker was served with the order to appear for examination of judgment debtor before serving Hooker with process on the renewal complaint.
¶ 23. We conclude our good cause inquiry, therefore, by holding that substantial evidence supports the chancellor's finding of fact that there was no good cause for Young's two-year delay in serving Hooker with process.
¶ 24. Moreover, we uphold the chancellor's legal finding that the statute of limitations began to run again at the end of 120 days. The chancellor ruled that filing the complaint to renew judgment tolled the seven-year statute of limitations for 120 days. This determination is correct, as confirmed by the supreme court in Erby v. Cox, 654 So.2d 503, 505 (Miss.1995), since filing of the complaint tolls the statute of limitations for 120 days even if process is not served within that time. See Fortenberry, 676 So.2d at 254; Brown v. Winn-Dixie Montgomery, Inc., 669 So.2d 92, 96 (Miss.1996).
¶ 25. Because no continuance was requested, and because Young did not show good cause for failing to serve process in the allotted time, the chancellor granted Hooker's motion to dismiss the 1989 judgment and the underlying 1982 judgment because the thirteen days that were tolled by filing the complaint to renew had run. "The fact that dismissal may work to preclude this action because of the running of the statute of limitation is of no consequence." Watters, 675 So.2d at 1244.
¶ 26. Discerning that the chancellor's finding that no good cause existed for the delay in service of process was supported by substantial evidence, and finding no abuse of discretion, we affirm the chancery court's dismissal of Young's complaint to renew the 1989 judgment. We further affirm the chancery court's dismissal of the 1989 and underlying 1982 judgment since the seven-year statute of limitations for the renewal of judgments has lapsed.
¶ 27. THE JUDGMENT OF THE QUITMAN COUNTY CHANCERY *463 COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, DIAZ, IRVING, PAYNE, AND THOMAS, JJ., CONCUR. LEE, J., NOT PARTICIPATING.
NOTES
[1] Hooker's girlfriend, Gayle Steele, lived on 310 South Natchez Street. The process server apparently attempted service at 310 North Natchez Street, an abandoned duplex. Hooker stayed with Ms. Steele, and received telephone messages, at this address.
[2] Julie Harvey was the sister of Hooker's former father-in-law. She was terminally ill during this period and required living assistance. Hooker drove Harvey to M.D. Anderson in Houston, Texas, several times during this period to receive cancer treatments.
[3] This testimony is attributed to the trial court in the record. However, the context indicates that Rotenberry actually made this statement in response to the court's question, "[D]id you have any reason to believe that you needed to provide anyone with the whereabouts of Mr. Hooker from March of 1996 on?"
[4] The chancellor stated March 6, 1996 as the date that the complaint to renew was filed. Therefore, his opinion states that the complaint was filed fifteen days before the lapse of the limitations period. The record reveals that the complaint was actually filed March 8, 1996, thirteen days before the limitations period lapsed. This two-day discrepancy has no bearing on the outcome of the case.