822 So.2d 306 (2002)
Lars MADISON, Appellant,
v.
DeSOTO COUNTY, Mississippi, Appellee.
No. 2000-CP-01155-COA.
Court of Appeals of Mississippi.
February 12, 2002.
Rehearing Denied April 16, 2002.
Certiorari Denied August 8, 2002.
*307 Lars Madison, Pro Se.
James Arden Barnett Jr., Tupelo, L. Bradley Dillard, Tupelo, Attorneys for Appellee.
Before KING, P.J., IRVING, and BRANTLEY, JJ.
KING, P.J., for the court.
¶ 1. This is an appeal from the DeSoto County Chancery Court. DeSoto County filed a petition for mandatory injunction against Lars Madison to require compliance with zoning and building regulations. Madison filed a counterclaim against DeSoto County alleging fraud and malicious prosecution. The chancellor granted DeSoto County's motion for summary judgment on Madison's counterclaim. On appeal, Madison has raised the following issues:
I. Whether the chancellor erred in granting DeSoto County's motion for summary judgment and not granting Madison's motion for extension of time to respond to summary judgment and a continuance of the hearing on the summary judgment motion for good cause.
II. Whether the chancellor erred in having two standards of court rules, one for a licensed practicing attorney and one for a private litigant.
III. Whether the chancery court was absent all jurisdiction in this case.

FACTS
¶ 2. On March 15, 1999, DeSoto County Code Enforcement Officer Archie Baldwin wrote Madison regarding a complaint about junk vehicles parked on his property. On April 5, 1999, another letter was sent to Madison advising that unless he complied with county zoning regulations, legal action would be taken against him. Madison failed to comply with DeSoto County's request.
¶ 3. On June 3, 1999, DeSoto County filed a petition for mandatory injunction to force compliance with zoning and other regulations. The petition alleged that Madison had allowed junk motor vehicles, *308 equipment, and scrap materials to accumulate on his property in willful violation of the zoning ordinances.
¶ 4. On June 21, 1999, Madison filed a response to the petition and filed a counterclaim alleging fraud and malicious prosecution. He claimed that the affidavit of Merritt Powell, director of the DeSoto County Planning Commission, was not a proper affidavit because it was false and fraudulent on its face. Madison also claimed that DeSoto County failed to state a claim upon which relief could be granted.
¶ 5. On June 28, 1999, DeSoto County responded to Madison's petition to dismiss and cross-complaint and denied all liability. In that response, DeSoto County alleged the following affirmative defenses against Madison's cross-complaint: (1) that Madison failed to state a claim pursuant to Rule 12(b)(6) of the Mississippi Rules of Civil Procedure, (2) that the cross-complaint should be dismissed because DeSoto County enjoyed absolute immunity, (3) that DeSoto County enjoyed immunity from Madison's tort claims pursuant to the Mississippi Tort Claims Act, (4) that DeSoto County enjoyed qualified immunity, (5) that Madison failed to substantially comply with notice requirements set forth in Miss.Code Ann. Section 11-46-1 (Supp.1999), (6) that DeSoto County is entitled to any and all protection provided by Miss.Code Ann. Section 85-5-7 (Supp. 1999), (7) that DeSoto County affirmatively stated that all attempts to enforce zoning regulations against Madison are a lawful exercise of DeSoto County's police powers granted under the laws of the State of Mississippi, (8) that DeSoto County claims and reserves all rights and defenses afforded by Miss.Code Ann. Section 11-1-65 (Supp.1999), (9) that DeSoto County enjoyed immunity from all punitive and exemplary damages, (10) that Madison's alleged injuries and damages, if any, were proximately caused by his own actions, (11) that DeSoto County acted in good faith at all times relevant to this action, and (12) that DeSoto County was justified in filing the mandatory injunction against Madison.
¶ 6. Pursuant to the request of DeSoto County, the chancellor signed an order on July 26, 1999, setting the case for trial on September 22, 1999. On August 12, 1999, Madison filed an objection to the setting of the trial date. Madison stated that discovery was pending and that the trial date should not be set until discovery had been completed.
¶ 7. DeSoto County employed new counsel, and as a result requested a continuance. This continuance was granted on September 13, 1999.
¶ 8. On May 5, 2000, DeSoto County filed another motion to set trial date. By order, filed on June 6, 2000, the trial was set for August 4, 2000. On May 10, 2000, DeSoto County filed a motion for summary judgment. On May 18, 2000, Madison requested an extension of time until July 7, 2000, in which to respond to the motion for summary judgment. In his response, Madison stated that he was presently under the doctor's care for damages to his arms and unable to respond. The chancellor denied Madison's request for an extension of time to respond on June 19, 2000, and granted DeSoto County's motion for summary judgment on the same day.

ISSUES AND ANALYSIS

I.
Whether the chancellor erred by denying Madison's motion for extension of time to respond to summary judgment and a continuance of the hearing on the summary judgment motion and by granting DeSoto County's motion for summary judgment.
¶ 9. Madison contends that because there were other motions pending before *309 the court, the chancellor erred when he failed to grant his motion for an extension of time to respond to DeSoto County's motion for summary judgment and granted DeSoto County's motion for summary judgment.
¶ 10. He argues that his counterclaim stated a cause of action and that there were genuine issues of disputed material facts presented by his pleadings. Madison's counterclaim states that DeSoto County brought a false and frivolous complaint against him. He contends that the original suit constituted malicious prosecution.
¶ 11. Madison claims that his health problems were good cause for an extension of time to respond to the summary judgment motion. In addition to his health problems, Madison contends that the law library was not open at that time of the year at night and that he could not write at that particular time nor take notes.
¶ 12. When reviewing the grant or denial of a motion for an extension of time, this Court's review is "plenary," if the decision is based on a question of law. When it is not, we apply the abuse of discretion standard. Young v. Hooker, 753 So.2d 456(¶ 17) (Miss.Ct.App.1999). In this case, we apply the abuse of discretion standard.
¶ 13. While claiming health problems as the basis for his requested extension, Madison failed to present the chancellor with appropriate information, to establish his problem and demonstrate a need for the extension. Accordingly, this Court finds no abuse of discretion.
¶ 14. Madison's next contention is that the chancellor erred in granting DeSoto County's summary judgment motion.
¶ 15. When reviewing the grant or denial of a motion for summary judgment by the chancery court, this Court applies the following standard of review:
We review de novo the record on appeal from a grant of a motion for summary judgment. In Brown v. Credit Center, Inc., 444 So.2d 358, 362 (Miss.1983), we interpreted Rule 56 and the standards that the trial courts should use in considering a motion for summary judgment. We explained that the trial court must review carefully all of the evidentiary matters before itadmissions in pleadings, answers to interrogatories, depositions, affidavits, etc. The evidence must be viewed in the light most favorable to the party against whom the motion has been made. If in this view the moving party is entitled to judgment as a matter of law, summary judgment should forthwith be entered in his favor. Otherwise the motion should be denied. Gulf Guaranty Life Insurance Co. v. Duett, 671 So.2d 1305, 1307 (Miss.1996) (quoting Northern Elec. Co. v. Phillips, 660 So.2d 1278, 1281 (Miss.1995)). Delta Pride Catfish, Inc. v. Home Ins. Co., 697 So.2d 400, 402-3 (Miss.1997).
¶ 16. The chancellor determined that the petition filed by DeSoto County fell within Mississippi Code Annotated Section 11-46-9 (Supp.1999), entitled "Exemption of governmental entity from liability on claims based on specified circumstances," which states in part that:
(1) a governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:
(a) Arising out of a legislative or judicial action or inaction, or administrative action or inaction of a legislative or judicial nature;
(b) Arising out of any act or omission of an employee of a governmental entity exercising ordinary care in reliance upon, or in the execution or performance of, or in the failure to execute or perform, *310 a statute, ordinance or regulation, whether or not the statute, ordinance or regulation be valid;
. . .
(e) Arising out of an injury caused by adopting or failing to adopt a statute, ordinance or regulation.
Miss.Code Ann. Section 11-46-9(1)(a)(b)(e) (Supp.1999).
¶ 17. The chancellor found that Madison's claims against DeSoto County were barred by sovereign immunity. The chancellor further noted that Miss.Code Ann. Section 11-46-15 (1972) as amended, provides that no governmental body, or employee thereof, may be held liable for punitive damages in any action in the courts of the State of Mississippi. Therefore, Madison's claims for punitive damages are barred pursuant to the above referenced statute. The chancellor determined that Rule 56(c) of the Mississippi Rules of Civil Procedure, which pertains to summary judgment, and the relative statutes above did not reveal that Madison had genuine issues of material fact which existed regarding his claims against DeSoto County. Having determined that summary judgment was appropriate, the chancellor granted summary judgment in favor of DeSoto County.
¶ 18. Madison has failed to provide evidence which suggests that the granting of summary judgment to DeSoto County was inappropriate. Therefore, we affirm the chancellor's decision.

II.
Whether the chancellor erred in having two standards of court rules, one for a licensed practicing attorney and one for a private litigant.
¶ 19. Madison contends that the chancellor erred by applying one standard of court rules for the licensed practicing attorney and another standard for a private litigant. Madison claims the chancellor "appears to cover and run interference for attorneys" who are challenged by petitioners that do not have the assistance of an attorney. He contends that the licensed practicing attorney can request extensions of time and the request is granted without showing good cause.
¶ 20. The Mississippi Constitution article 3, Section 25 permits a person to represent himself, pro se, in a civil proceeding. It is not necessary that an attorney be employed. Bullard v. Morris, 547 So.2d 789, 790 (Miss.1989). However, having elected to proceed without an attorney, a person is bound by the same rules of practice and procedure as an attorney. Id.
¶ 21. Madison maintains that he was subject to a different set of rules than opposing counsel. He contends that he showed good cause which would justify an extension of time to respond to the summary judgment motion. Madison suggests that the denial of his motion, while DeSoto County's similar motion was granted, is indicative of the difference in treatment accorded a pro se litigant and one represented by counsel.
¶ 22. Standing alone, this does not show that the chancellor used a different set of rules for each party. There is nothing in the record which reveals that either party was judged by a different set of rules. Absent such proof, Madison has failed to demonstrate that the chancellor abused his discretion in denying his request for an extension of time. Therefore, the chancellor's failure to grant Madison's motion was not an abuse of his discretion. Young, 753 So.2d at 456(¶ 17). Upon review of the evidence presented, this Court finds no abuse of discretion.

III.
Whether the chancery court was absent all jurisdiction in this case.
¶ 23. Madison contends that the chancery court lacked jurisdiction over this *311 matter. He argues that since DeSoto County's complaint charged him with violations of Miss.Code Ann. §§ 17-1-19[1] and 17-1-27[2] (Rev.1995), the chancery court should not be allowed to hear the matter. It is well settled that claims regarding title, possession and use of land are within the chancery court's subject matter jurisdiction. Johnson v. Hinds County, 524 So.2d 947, 952 (Miss.1988). Therefore, a county may seek injunctive relief in chancery court to enforce a zoning ordinance. Id. at 957. Having determined that the chancery court was within its jurisdiction to hear this matter, we find this issue is without merit.
¶ 24. THE JUDGMENT OF THE DESOTO COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., SOUTHWICK, P.J., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER and BRANTLEY, JJ., concur.
NOTES
[1] Miss.Code Ann. § 17-1-19 (Rev.1995): Remedies of local governing authorities. In case any building or structure is erected, constructed, reconstructed, altered, repaired, converted or maintained, or any building, structure, or land is used in violation of the zoning law or of any ordinance or other regulation made under authority conferred hereby, the proper local authorities of any county or municipality, in addition to other remedies, may institute any appropriate action or proceedings, to prevent such unlawful erection, construction, reconstruction, alteration, repair, conversion, maintenance or use, to restrain, correct, or abate such violation, to prevent the occupancy of said building, structure or land, or to prevent any illegal act, conduct, business, or use in or about such premises.
[2] Miss.Code Ann. § 17-1-27 (Rev.1995): Penalties for violations. Any person, firm or corporation who shall knowingly and wilfully violate the terms, conditions or provisions of a zoning ordinance adopted under the authority of sections 17-1-1 to 17-1-25, inclusive, for violation of which no other criminal penalty is prescribed, shall be guilty of a misdemeanor and upon conviction therefor shall be sentenced to pay a fine of not to exceed one hundred dollars ($100.00), and in case of continuing violations without reasonable effort on the part of the defendant to correct same, each day the violation continues thereafter shall be a separate offense.