# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2017-CA-00133-SCT

*REGGIE ELLIOTT AND BRENDA EJIMOFOR, AS CO-ADMINISTRATOR AND CO-ADMINISTRATRIX OF THE ESTATE OF JOE ORLANDO ELLIOTT, DECEASED, ORLANDO ELLIOTT, AND FRANKIE MITCHELL, AS CO-GUARDIANS OF ORLANDREA ELLIOTT, A MINOR, MICHAEL ELLIOTT, AND ALMA ELLIOTT*

*v.*

*AMERIGAS PROPANE, L.P.*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/14/2016 |
| TRIAL JUDGE: | HON. ANDREW K. HOWORTH |
| TRIAL COURT ATTORNEYS: | CASEY LANGSTON LOTT |
| | DUNCAN L. LOTT |
| | JAY MARSHALL ATKINS |
| | WARREN HORN |
| | JASON M. ZAGER |
| | MICHAEL J. TARLETON |
| | CHRISTY D. JONES |
| | ORLANDO RODRIQUEZ RICHMOND, SR |
| | MICHAEL E. McWILLIAMS |
| | MARK ALAN DREHER |
| | HARRY CASE EMBRY |
| | KENNETH MICHAEL FITZGERALD |
| | BARBRAE A. LUNDBERG |
| | PAUL PACIFIC BLAKE |
| | BRETT ANDREW SCHUBERT |
| | JOHN JEFFREY TROTTER |
| | BERNARD HESS BOOTH, III |
| | JESSE MITCHELL, III |
| COURT FROM WHICH APPEALED: | MARSHALL COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | JAY MARSHALL ATKINS |
| ATTORNEYS FOR APPELLEE: | MICHAEL J. TARLETON |
| | WARREN HORN |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |

**BEFORE WALLER, C.J., COLEMAN AND MAXWELL, JJ.**

**MAXWELL, JUSTICE, FOR THE COURT:**

¶1.     An undetected flammable gas ignited and caused an explosion at the Elliotts' home. Because the Elliotts believed the flammable gas was natural gas from a broken municipal pipeline, they filed suit against the city.  They also sued the chain of vendors that supplied the city with natural gas and related products.  But a few years into litigation, the defendants began pointing to the propane gas tank in the Elliotts' yard.  The defendants insisted propane gas—not natural gas—was the source and cause of the explosion.  While the Elliotts and their experts adamantly denied that propane gas caused the explosion, the Elliotts amended their complaint, adding claims against the propane gas vendor.  They did so, not because they sought to prove propane gas caused the explosion, but to avoid the risk of fault being apportioned to a nonparty—or, as they put it, to cut off an "empty chair defense."

¶2.     But their reason for joining the propane gas defendant is now gone.  The Elliotts were able to negotiate a settlement with the municipality.  And summary judgment was previously granted to all of their targets—the Natural Gas Defendants—which have all been dismissed. So the Elliotts have no need to assert an empty chair defense.

¶3.     The posture of this case has placed the Elliotts in a quandary, and they now attempt to change course to pursue the propane gas defendant—the defendant they admitted they did

not believe caused the explosion. While our procedural law permitted the Elliotts to plead inconsistent, alternative claims that the explosion could have been caused by either natural gas or propane gas, it is not their pleadings that complicate this case. Rather, it is the decade the Elliotts spent pursuing *only* their natural gas claims, assuring both federal and state court judges that there was no merit or evidence supporting the propane gas theory. These various written and oral representations prompted Circuit Judge Andrew K. Howorth to find the Elliotts were bound by their cumulative admissions. Judge Howorth granted the propane gas defendant summary judgment, preventing the Elliotts from now taking an inconsistent position to pursue the propane gas defendant. Finding no error in the circuit judge's ruling, we affirm.

## Background Facts and Procedural History

¶4. Joe and Alma Elliott's Holly Springs home exploded on April 3, 2008. Joe died as a result, and Alma, her grandson Michael, and her infant granddaughter Olandrea were severely injured. Investigators quickly determined flammable gas had entered and accumulated in the Elliotts' home. The gas was then ignited, and, after initially starting a fire, caused an explosion. The next morning, the Holly Springs Utility Department's (HSUD) assistant superintendent investigated the scene and noticed "bubbling in the street." HSUD supplied natural gas to Holly Springs customers through an underground pipe network. Tests revealed a gas leak under Cuba Street, about sixty to seventy feet from the Elliotts' home. And one of the Elliotts' neighbors told investigators he had smelled natural gas in the neighborhood "off and on" before the explosion.

3

### I.    The Elliotts' Complaint

¶5.    On October 14, 2008, the Elliotts filed suit against HSUD, who owned and maintained the municipal gas distribution pipelines and supplied natural gas to customers.  They also sued El Paso Corporation, a natural gas supplier, and numerous John Does.  As discovery progressed, the Elliotts amended their complaint six times and replaced John Does with named defendants.  By their final amendment, the Elliotts had named, in addition to HSUD and El Paso, Tennessee Gas & Pipeline Company, the subsidiary of El Paso that directly supplied natural gas to HSUD.  They also named Tri-State Meter and Regulator Service, Inc., which supplied HSUD with warning odorant for its natural gas, and Chevron Phillips Chemical Company, L.P., Tri-State's warning-odorant supplier.  These companies became known as the "Natural Gas Defendants."

¶6.    The Elliotts claimed the Natural Gas Defendants were negligent and supplied a defective product—the warning odorant.  Their theory was that natural gas from the broken Cuba Street pipeline traveled through the ground to their home.  And the allegedly defective warning odorant was removed, or adsorbed, in the process.  This caused natural gas to accumulate in the house without warning, leading to the explosion.

¶7.    The Natural Gas Defendants denied liability.  They pointed out the Elliotts' home was not connected to a natural gas pipeline.  Instead, their home used propane gas, supplied by a large tank in their yard.  The Natural Gas Defendants asserted that the fire and explosion—which originated near a propane heater in Joe and Alma's bedroom—were caused by propane gas, not natural gas.  In response to this finger-pointing by the Natural Gas

4

Defendants, the Elliotts named AmeriGas Propane, L.P., as a defendant, claiming AmeriGas was negligent and supplied a defective product. But they did not assert propane caused the explosion. As they described it, the *only* reason for naming AmeriGas was to prevent an "empty chair defense."

¶8. Even after pleading claims against AmeriGas, the Elliotts repeatedly represented—both in state and federal court—that they were "not buying the Natural Gas Defendants' theory" about propane gas. The Elliotts instead maintained that natural gas caused the fire and explosion.

¶9. When the defendants sought to remove the case to federal court after AmeriGas was added as a defendant, District Judge Michael P. Mills remanded the case back to Marshall County Circuit Court. He based his remand on the Elliotts' direct assertions to him that natural gas—not propane gas—had caused the explosion. And the Elliotts represented to the judge they would only present evidence to that effect.

¶10. AmeriGas, with the Natural Gas Defendants joining in, had argued that when the Elliotts made claims against AmeriGas, the case had been so substantially altered that it constituted a new suit. Thus, the thirty-day removal period had been revived. *See* 28 U.S.C. § 1446. But the Elliotts fought against removal, representing to the federal judge that their experts "have always opined that this explosion was caused by natural gas[.]" The Elliotts assured Judge Mills they would not offer any evidence or testimony that propane caused the explosion and "AmeriGas knows it." They maintained "the addition of AmeriGas will not affect the proof presented by the plaintiffs at trial."

5

¶11.    Because the Elliotts admitted they were not targeting AmeriGas, the Elliotts argued the "same factual situation" was present as had existed before AmeriGas had been sued. Thus, the removal period had not been revived. The district judge acted on the Elliotts' assurances and found that:

¶12.    Plaintiffs' rationale in adding AmeriGas is that their attorney *simply wished to avoid the apportionment of fault to a non-party at trial*. Thus, the target of the Plaintiffs' attack, by their own admission, *is not AmeriGas*. Plaintiffs intend to present the same evidence at trial as they had planned prior to their third amendment . . . [the] Plaintiffs' legal theory of the case *remains the same*.

(Emphasis added.) For these reasons, Judge Mills remanded the case to state court.

¶13.    After the case was remanded, the Elliotts made later amendments, based on subsequent deposition testimony, to their claims against AmeriGas. But they consistently represented to the court—both orally and in writing—that propane gas did not cause the explosion. The Elliotts even sought to exclude evidence and expert testimony that propane gas had caused the explosion.

## II.    AmeriGas's First Summary-Judgment Motion

¶14.    After remand to state court, AmeriGas filed its first motion for summary judgment. It argued the Elliotts had judicially admitted that propane gas did not cause the explosion. And even while arguing against summary judgment, the Elliotts continued to insist that natural gas had caused the explosion. The Elliotts made it clear they were actively trying to undercut the propane gas theory.[1]

_____

[1] The Elliotts filed a motion in limine to exclude expert testimony that propane gas had caused the explosion. And they asserted that only "until such time as this Court grants Plaintiffs' forthcoming motion in limine to exclude [the Natural Gas Defendants' experts], the natural gas Defendants' theory of the case remains a viable one for the jury to consider

6

¶15. The Elliotts did not plead or argue that causation was unknown and therefore a jury question. Instead, it is the Elliotts' response to AmeriGas's first summary-judgment motion that perhaps best portrays their view that AmeriGas was not the target of their lawsuit. As they framed it:

¶16. [The] [d]efendants will present this theory to the jury as a potential explanation for how this explosion could have resulted from the ignition of propane gas, as opposed to natural gas. If the Court would like to find as a matter of law that the natural gas Defendants have failed to produce any admissible evidence that the subject explosion was caused by propane gas as opposed to natural gas . . . then Plaintiffs *are happy for AmeriGas to go home*.

(Emphasis added.) Still, even in light of this insistence, the trial judge was hesitant to grant AmeriGas summary judgment at that stage. So AmeriGas remained a defendant.

### III. AmeriGas's Second Summary-Judgment Motion

¶17. Meanwhile, all the Natural Gas Defendants had likewise moved for summary judgment. And Judge Howorth, with one exception, granted summary judgment in the Natural Gas Defendants' favor. Tri-State—the sole remaining natural gas defendant—appealed. So did the Elliotts.

¶18. On appeal, this Court in a unanimous opinion found summary judgment was appropriate for *all* Natural Gas Defendants. *See Elliott v. El Paso Corp. et al.*, 181 So. 3d 263 (Miss. 2015).[2] It was only after the Elliotts' claims against all Natural Gas Defendants were dismissed that the Elliotts switched course. At point, they began a full-throttle

and AmeriGas must remain at the table."

[2] Presiding Justice Dickinson authored the opinion, joined by Chief Justice Waller and Justices Lamar, Kitchens, Chandler, Pierce, King and Coleman. Presiding Justice Randolph did not participate.

7

pursuit against AmeriGas.

¶19.  After this Court's decision in **El Paso**, AmeriGas filed a second motion for summary judgment.  In it, AmeriGas asserted the Elliotts had no evidence that propane gas had caused the explosion.  It also renewed its argument that the Elliotts had judicially admitted propane gas was not the cause.  This time, Judge Howorth agreed with AmeriGas.  He found the Elliotts' statements and briefs against the propane gas theory during litigation had compounded and were judicial admissions.

¶20.  As Judge Howorth saw it:

> [T]here is no question that the case that the plaintiff wants to present now was a case that was going to come in through the back door. Through the defendants who are not here any more.  That is a fact.  And that does not in and of itself mean that he can't now present that case which is what he intends to do.  But it sure is a twisted way to arrive at where we are.

Judge Howorth quipped that the case "went to the Supreme Court with [a] heart beat and it came back on life support.  And the question for me is whether or not it's my job to pull the plug . . . ."  He noted "for the record that the judicial admissions to some extent are cumulative and we have more today than we had the last time we were in court."  Based on these admissions and the "factors argued by . . . Amerigas," he granted AmeriGas summary judgment.  Judge Howorth emphasized his history with the case and "hope[d] that if [this case] is looked at again the appellate court will appreciate how difficult this is to wrestle with . . . ."[3]

## IV.    The Present Appeal

---

[3] Judge Howorth was highly complimentary of Mr. Lott, who had diligently pursued the Elliotts' case for many years.

¶21. The Elliotts now appeal to this Court. They argue Judge Howorth wrongly deemed their various oral and written representations to state and federal courts judicial admissions. In their view, they merely pleaded alternative claims under Mississippi Rule of Civil Procedure 8(e)(2), and AmeriGas was not entitled to summary judgment. The Elliotts further insist Judge Howorth wrongly denied their motion for a seventh amended complaint, deprived them of their constitutional right to a jury trial, and did not follow the law of the case.

¶22. We review de novo a trial court's grant or denial of summary judgment. *Young v. Smith*, 67 So. 3d 732, 741 (Miss. 2011) (citing *J.R. v. Malley*, 62 So. 3d 902, 905 (Miss. 2011)). "Summary judgment is proper only when no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law." *Owen v. Pringle*, 621 So. 2d 668, 670 (Miss. 1993) (citations omitted). To determine whether a material fact is in dispute, "the court reviews 'all admissions, answers to interrogatories, depositions, affidavits, and any other evidence, viewing the evidence in a light most favorable to the non-movant.'" *Id.* (quoting *Skelton v. Twin Cty. Rural Elec. Ass'n*, 611 So. 2d 931, 935 (Miss. 1992)).

**Discussion**

¶23. After review, we find the record shows the Elliotts made pointed and contradictory representations about the propane gas theory in statements and briefs before both federal and state courts, and Rule 8(e)(2) does not apply. We see no error in the trial judge's ruling, as his decision was not focused on the Elliotts' pleadings but rather their representations made after the pleadings. A trial judge may certainly find oral or written representations in briefs

9

or by counsel are judicial admissions. But even if that was not the case here, AmeriGas is still entitled to summary judgment because the Elliotts failed to meet their burden of production, since there is no causation evidence to support claims against AmeriGas.

### I. The Elliotts' Propane Gas Claims

¶24. From the outset, this Court recognizes the trial judge, the Elliotts, and AmeriGas found themselves in a difficult case, factually and procedurally. Ultimately, Judge Howorth found the Elliotts' cumulative judicial admissions over nearly ten years of litigation entitled AmeriGas to summary judgment. He found the Elliotts had admitted that propane gas did not cause the explosion. And with no contrary evidence, they were prohibited from now changing positions.

#### A. Judicial Admissions

¶25. Judicial admissions are formal concessions in pleadings or stipulations by a party or counsel that are binding on the party making them. *Martinez v. Bally's Louisiana, Inc.*, 244 F.3d 474, 476 (5th Cir. 2001). While not itself evidence, a judicial admission has the effect of withdrawing a fact from contention. *Id.*

¶26. The Elliotts insist they made no admissions but instead merely pleaded alternative, inconsistent theories of liability, which Mississippi Rule of Civil Procedure 8(e)(2) permits them to do. The Elliotts are correct in one respect. Rule 8(e)(2) does permit pleading alternative, inconsistent, claims. And had Judge Howorth held against the Elliotts the inconsistent allegations in their amended complaint, then Rule 8(e)(2) would require this Court to reverse that ruling. *See Henry v. Daytop Village, Inc.*, 42 F.3d 89, 95 (2d Cir.

10

1994) (finding the court may not hold one claim "as an admission against another alternative or inconsistent claim"). But that is not what Judge Howorth did. His ruling did not hinge on the inconsistent factual allegations in the Elliotts' amended complaint. Instead, his decision was based on the numerous factual assertions that—despite what the amended complaint said—propane gas did not cause the explosion. *See Purgess v. Sharrock*, 33 F.3d 134, 144 (2d Cir. 1994) (holding that a trial court may hold statements by an attorney or by a party in a brief as a binding judicial admission of fact).[4]

¶27.    In other words, the record bears out that the Elliotts never argued that either the Natural Gas Defendants *or* AmeriGas were to blame. Instead, for almost ten years they represented that only the Natural Gas Defendants were responsible. So this is simply not a situation covered by Rule 8(e)(2). Rule 8(e)(2) gives no protection to a party who at every turn discounts and attempts to defeat its supposed alternate theory. *See Schott Motorcycle Supply, Inc. v. Am. Honda Motor Co., Inc.*, 976 F.2d 58, 61-62 (1st Cir. 1992) (holding that, because the plaintiff's factual admission "was not made in the context of an alternative or hypothetical pleading," it was not protected by Rule 8(e)(2)).

¶28.    Essentially, Judge Howorth estopped the Elliotts from taking a completely opposite position than the one they repeatedly took throughout the course of litigation—an action he was authorized to take. *See Rankin v. Am. Gen. Fin., Inc.*, 912 So. 2d 725, 728 (Miss. 2005) (affirming the trial court's ruling that a plaintiff was estopped from raising in state

---

[4] *See also City Nat'l Bank v. United States*, 907 F.2d 536, 544 (5th Cir. 1990) (statements of fact in briefs, particularly summary judgment briefs, may be treated as binding judicial admissions); *United States v. McKeon*, 738 F.2d 26, 30 (2d Cir. 1984) (a statement by an attorney may be admissible against his or her client).

11

court claims that had been abandoned in federal court for the purpose of having the case remanded). He recognized that it was a "fact" that they were now trying to push a claim "through the back door"—a claim they had asserted solely to prevent an "empty chair defense" against defendants who were no longer present.

¶29. The record backs up his position. Despite their amended complaints, the Elliotts had consistently represented in both state and federal court that AmeriGas was never the target of their lawsuit because there was no evidence that propane gas was the culprit.[5] The record shows their representation to the federal judge that they did not intend to target AmeriGas gained them a remand to circuit court. *Cf. id.* at 729 (noting the plaintiffs had secured remand by "successfully, unequivocally, and repeatedly assert[ing] to the federal district court" that their claims were not based on federal law). And after remand, the Elliotts further represented to Judge Howorth, during AmeriGas's first motion for summary judgment, that the propane gas theory was merely an unsubstantiated defense theory. It was only in defense of the second motion for summary judgment that the Elliotts changed course and argued they intended to pursue the theory that propane gas had caused the explosion. But by this point, Judge Howorth found the Elliotts could not reverse course. *See id.* at 728.

¶30. Because we can discern no legal or factual error with his decision, we affirm. But still, we emphasize that our legal system permits flexibility—even inconsistency—in pursing

---

[5] A prime example from the record is the Elliotts' response to AmeriGas's first motion for summary judgment. The Elliotts very clearly explain, while attempting to defend against summary judgment, that they "have consistently maintained that the explosion was caused by natural gas" and that evidence propane gas caused the explosion "is completely illogical and inconsistent with the forensic evidence available to everyone in this case."

12

a theory of liability or trial strategy. But as Judge Howorth essentially found, there comes a time when a party reaches a point of no return—when it has so thoroughly and consistently committed itself to a position that it cannot now turn back. And we cannot say that he was wrong to hold the Elliotts to the consequences of their cumulative factual assertions and representations undercutting the propane gas theory and keeping them from changing course.

### B. Burden of Production

¶31.    Even absent judicial admissions, there is yet another reason that mandates we affirm on de novo review—the Elliotts have not met their burden of production.

¶32.    While, as the summary-judgment movant, AmeriGas must show no genuine material fact issues exist, the Elliotts must make a showing too. Because they bear the burden at trial to prove every essential element of their case, they bear the burden at the summary-judgment stage to produce evidence establishing each element. *See* **Karpinsky v. Am. Nat'l Ins. Co.**, 109 So. 3d 84, 88-89 (Miss. 2013). And by their own admission, they cannot meet this burden.

¶33.    Specifically, the Elliotts themselves asserted there was no evidence that propane gas caused the explosion. For negligence claims, "'[i]t is not enough that negligence of one person and injury to another coexisted, but the injury must have been caused by the negligence.'" **Herrington v. Leaf River Forest Prods., Inc.**, 733 So. 2d 774, 779 (Miss. 1999) (quoting **Kramer Serv., Inc. v. Wilkins**, 184 Miss. 483, 497, 186 So. 625, 627 (1939)). And for products-liability claims, causation may be proven through circumstantial evidence, but a plaintiff must still prove proximate cause. *See* **Mine Safety Appliance Co. v. Holmes**,

171 So. 3d 442, 450-51 (Miss. 2015); *Smith v. Union Carbide Corp.*, 130 So. 3d 66, 70-71 (Miss. 2013).

¶34. Here, the causation expert witnesses originally designated by the Elliotts "have always opined that this explosion was caused by natural gas." And the Elliotts argued the Natural Gas Defendants' expert witnesses—cross-designated by them to testify that propane gas was the cause—were "not qualified to testify" on theories of causation or should testify only on theories of causation that were "tested by applying accepted methods of testing and observation, not those based on pure speculation." In other words, they insisted the cross-designated experts should testify only about their initial findings and conclusions that natural gas was the cause. It was for this reason the Elliotts moved to exclude expert-witness testimony or limit their cross-designated experts to testimony that natural gas—not propane gas—was the cause.

¶35. So even absent judicial admissions, without causation evidence, summary judgment was appropriate. The Elliotts, as "the non-moving party[,] [have] failed to make a showing sufficient to establish the existence of an element essential to the party's case, and on which [they] will bear the burden of proof at trial." *Karpinsky*, 109 So. 3d at 89 (citation omitted).

¶36. This Court "may affirm the lower court's grant of summary judgment on grounds other than that which the trial court used." *Kirksey v. Dye*, 564 So. 2d 1333, 1336 (Miss. 1990) (citation omitted). While Judge Howorth granted summary judgment specifically citing judicial admissions—and the awkward posture of naming a defendant only to prevent an empty chair defense—AmeriGas had also argued the Elliotts lacked causation evidence

14

and had failed to meet their burden of production. After review, we find this is also true.

## II.    Motion for Seventh Amended Complaint

¶37.    The grant of summary judgment is not the only decision the Elliotts challenge. After this Court in *El Paso* held summary judgment was appropriate for *all* the Natural Gas Defendants, the Elliotts, at a subsequent hearing before the trial judge, verbally moved to amend their complaint a *seventh* time. Without ruling on their motion, Judge Howorth instead granted AmeriGas's second motion for summary judgment. The Elliotts claim this failure to rule was reversible error. We disagree.

¶38.    Since AmeriGas was the last remaining defendant, the grant of their motion for summary judgment contained an *implicit* denial of all outstanding motions. *See Lucas v. Baptist Mem'l Hosp.-N. Miss, Inc.*, 997 So. 2d 226, 231 (Miss. Ct. App. 2008); *see also Tollett v. City of Kemah*, 285 F.3d 357, 369 n.* (5th Cir. 2002). Decisions to grant or deny "[m]otions for leave to amend complaint[s] are left to the sound discretion of the trial court." *Moeller v. Am. Guar. & Liab. Ins. Co.*, 812 So. 2d 953, 961 (Miss. 2002) (quoting *Preferred Risk Mut. Ins. Co. v. Johnson*, 730 So. 2d 574, 579 (Miss. 1998), *overruled on other grounds*). Absent an abuse of discretion, this Court will not reverse such a decision. *Id.*

¶39.    Mississippi Rule of Civil Procedure 15(a) governs motions to amend. We have liberally construed the language that "leave [to amend] shall be freely given when justice so requires" to suggest that, unless actual prejudice would result to the opposing party, leave to amend should be granted. *Id.* (quoting *Estes v. Starnes*, 732 So. 2d 251, 252 (Miss. 1999)). The Elliotts suggest, without a finding from the trial court that AmeriGas would suffer actual

15

prejudice, the judge abused his discretion by implicitly denying their motion to amend.

¶40.    But what the Elliotts are seeking is not an amendment to their complaint.  As they maintain in their appellate brief, the proposed amended complaint "would not have altered the allegations against AmeriGas whatsoever."  Instead, "it would have merely removed the alternative theory of causation against the Natural Gas Defendants."  In other words, the Elliotts are asking the trial court to remove claims that this Court has already ruled fail as a matter of law.  They are not adding anything to their complaint.

¶41.    Beyond that, the Elliotts have amended their complaint six times.  Three of those amendments came after AmeriGas was named to prevent an "empty chair defense."  And this most recent motion to amend the complaint comes more than three years after the sixth amended complaint was filed on June 24, 2013.

¶42.    We see no abuse of discretion here.  What the Elliotts are asking for is not truly a motion to amend their complaint—certainly not as contemplated by Rule 15.  And, even if the Elliotts' motion is treated as their seeking to amend their complaint, they occupy no different position now than if the motion had been granted.  The claims they are seeking to remove have already been adjudged insufficient as a matter of law.

### III.    Right to a Jury Trial

¶43.    The Elliotts next argue that by dismissing their claims against AmeriGas, Judge Howorth violated their constitutional right to a jury trial.  Both the United States Constitution and Mississippi Constitution establish the right to trial by jury.  U.S. Const. amend. VII; Miss. Const. art. 3, § 31.  But to exercise this right, there must be a factual dispute requiring

a jury trial. The law is well-settled on this point. Indeed, the United States Supreme Court has held that "to preserve the court from frivolous defenses, and to defeat attempts to use formal pleading as a means to delay the recovery of just demands," rules for summary judgment are necessary and do not violate the Seventh Amendment. *Fid. & Deposit Co. of Maryland v. U.S.*, 187 U.S. 315, 320, 23 S. Ct. 120, 122, 47 L. Ed. 194 (1902); *see also Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 336, 99 S. Ct. 645, 654, 58 L. Ed. 2d 552 (1979) (many procedures developed since 1791 have diminished the civil jury's historic domain while also being consistent with the Seventh Amendment).

¶44. In other words, "[n]o constitutional right to a [jury] trial exists" where a party fails to show that "some dispute of material fact exists which a trial could resolve." *Oglesby v. Terminal Transp. Co., Inc.*, 543 F.2d 1111, 1113 (5th Cir. 1976). This Court similarly interprets the Mississippi Constitution. The right to a jury trial is not violated when the party moving for summary judgment is entitled to a judgment by law. *Towner v. Moore*, 604 So. 2d 1093, 1098 (Miss. 1992).

¶45. Because the Elliotts lack a triable case, and AmeriGas is entitled to judgment as a matter of law, the trial judge did not violate the Elliotts' right to a jury trial by granting summary judgment.

IV. **Law of the Case**

¶46. Lastly, the Elliotts suggest the judge ignored the law-of-the-case doctrine. They insist that because both the state and federal trial courts previously ruled against AmeriGas's judicial-admissions arguments, those rulings became the law of the case. This is not so. The

17

law-of-the-case doctrine requires a dispositive, final ruling on a question of law. *See Holland v. Peoples Bank & Trust Co.*, 3 So. 3d 94, 104 (Miss. 2008). Every case cited by the Elliotts involved an appeal, a ruling and remand by this Court, and a subsequent appeal involving the same or similar legal question. *See Fortune v. Lee Cty. Bd. of Supervisors*, 725 So. 2d 747 (Miss. 1998); *Simpson v. State Farm Fire & Cas. Co.*, 564 So. 2d 1374 (Miss. 1990); and *Woolridge v. Woolridge*, 856 So. 2d 446 (Miss. Ct. App. 2003). That is not what happened here. The federal judge ruled on the Elliotts' motion to remand the case, addressing only whether the time for removal under United States Code Title 28, Section 1446, had been revived when AmeriGas was added as a defendant. The record contains no ruling by the federal court on the merits of any judicial admission argument.[6] And while the state circuit judge denied AmeriGas's first motion for summary judgment, he was at liberty to revisit and change his ruling. "An order denying summary judgment is neither final nor binding upon the court or successor courts." *Holland*, 3 So. 3d at 104 (quoting *Mauck v. Columbus Hotel Co.*, 741 So. 2d 259, 268 (Miss. 1999)). And the law-of-the-case doctrine "has no applicability where the order or judgment is not of a final character." *Id.* (citing *Mauck*, 741 So. 2d at 268).

¶47. Because the order denying AmeriGas's first motion for summary judgment was neither final nor binding on the trial court, it was well within Judge Howorth's authority to

---

[6] Even if the federal trial court had denied a motion for summary judgment based on judicial admissions, that decision would not be a final judgment and therefore not subject to the law-of-the-case doctrine. *See Zarnow v. City of Wichita Falls*, 614 F.3d 161, 171 (5th Cir. 2010). *Cf. Liberty Mut. Ins. Co. v. Wetzel*, 424 U.S. 737, 744, 96 S. Ct. 1202, 1206-07, 47 L. Ed. 2d 435 (1976) (a summary judgment ruling that leaves issues or claims unresolved has never been considered a "final judgment" under 28 U.S.C. § 1291).

18

revisit the issue and change his ruling. So the law-of-the-case doctrine does not apply.

## Conclusion

¶48. For nearly a decade the Elliotts pursued the Natural Gas Defendants, consistently undercutting the propane gas theory and related claims. The circuit judge found their admissions were cumulative, and they were just too far down that road to turn back now. The Elliotts' contradictory assertions are not alternative, inconsistent claims protected by Rule 8(e)(2), and could be deemed judicial admissions or grounds for estoppel. Finding no error in those rulings, and finding the Elliotts also failed in their burden of production, this Court affirms summary judgment in AmeriGas's favor.

¶49. **AFFIRMED.**

**WALLER, C.J., KITCHENS, P.J., KING, COLEMAN, BEAM, CHAMBERLIN AND ISHEE, JJ., CONCUR. RANDOLPH, P.J., NOT PARTICIPATING.**