# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-CP-00751-COA

**EDMOND L. LINDSEY**                                                    **APPELLANT**

v.

**FORD MOTOR COMPANY AND COUNTRY**                            **APPELLEES**
**FORD**

| | |
|---|---|
| DATE OF JUDGMENT: | 05/23/2017 |
| TRIAL JUDGE: | HON. CELESTE EMBREY WILSON |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | EDMOND L. LINDSEY (PRO SE) |
| ATTORNEYS FOR APPELLEES: | D. STERLING KIDD |
| | WILLIAM ALBERT BROWN |
| | WILLIAM TYLER SCOTT |
| NATURE OF THE CASE: | CIVIL - TORTS-OTHER THAN PERSONAL INJURY & PROPERTY DAMAGE |
| DISPOSITION: | AFFIRMED - 12/18/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, P.J., BARNES AND WILSON, JJ.**

**BARNES, J., FOR THE COURT:**

¶1.    Edmond Lindsey sued Ford Motor Company and Country Ford, alleging that he was

sold a defective vehicle and was entitled to a full refund of the purchase price.  Lindsey

failed to provide support for his claim, and the circuit court granted summary judgment to

the defendants.  Finding summary judgment was appropriately granted, we affirm.

## FACTS

¶2.    According to Lindsey's pro se complaint filed on August 13, 2012, in the DeSoto

County Circuit Court, he went to Country Ford in Southaven, Mississippi, on April 4, 2012,

to purchase a red 2012 Ford Focus hatchback. Country Ford did not have one in stock; so the salesperson offered to order one. The salesperson then offered to let Lindsey test drive a similar model, a white 2012 Ford Focus, that he found "in the shop." After the test drive, Lindsey's wife expressed interest in the white Ford Focus and asked, "[W]hat's wrong with this car?" Lindsey asserts that the salesperson did not respond to her question but offered them the vehicle for $1,000 less than the red Focus, and Lindsey purchased it.

¶3.     Lindsey alleged that he returned to Country Ford approximately two weeks later on April 19, 2012, and complained to a service technician that the vehicle was "jerking, coasting, stalling, rolling backwards after stopping and taking off again" and that "[a]pplication of the brakes periodically influence[d] the direction of the car."[1] According to Lindsey, the technician responded, "[T]here is nothing wrong with the car[;] they all do that." Lindsey claimed that a sales manager stated he was going to drive the car, but he declined to do so after speaking with the service technician. The sales manager, Terry Pierce, disputed this claim, stating through an affidavit that Lindsey refused to accompany him on the test drive and left the dealership. Lindsey stated that before leaving the dealership, he asked for his money back, but the sales manager refused. Lindsey alleged that

---

[1] Lindsey also alleged that "[t]he rear windshield wiper[] comes on at time[s] on its own . . . ." The circuit court questioned Lindsey about this claim at the summary-judgment hearing, asking, "Did you allege that your windshield wipers were coming on?" Lindsey responded, "No. . . . I don't know where you go[t] that from." He also alleged in the complaint that County Ford failed to program the satellite radio, GPS, and Emergency Service Radio Systems. These claims were not pursued and have been waived. *See Holman v. Howard Wilson Chrysler Jeep Inc.*, 972 So. 2d 564, 566 n.1 (Miss. 2008).

he later discovered that the vehicle, which had been represented as new, had been previously titled in Mississippi. In his complaint, Lindsey alleged breach of warranty, and he sought a full refund of the vehicle's purchase price plus damages and court costs.[2]

¶4. Discovery proceeded, and various motions were filed intermittently during the next four years. At one point, in May 2016, the circuit clerk moved for dismissal of the case for failure to prosecute. On December 29, 2016, Ford Motor Company moved for summary judgment. After a hearing, its motion was granted. On April 27, 2017, Country Ford moved for summary judgment. The next day, Lindsey moved to amend his complaint to add additional claims against Country Ford. He also filed motions to compel additional discovery and for the recusal of the circuit court judge. All of Lindsey's motions were denied. After a hearing, the circuit court granted Country Ford's motion for summary judgment. Lindsey's motion for reconsideration of the orders granting summary judgment was denied. Lindsey appeals.

## STANDARD OF REVIEW

¶5. Summary judgment is proper when, viewing the evidence in the light most favorable to the nonmoving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue

---

[2] On September 28, 2012, Lindsey filed a motion for leave to amend his complaint, and he filed an amended complaint alleging additional claims under the Tennessee Consumer Protection Act, as well as mental and emotional distress. Lindsey was not granted leave to amend his complaint; thus, we do not address these additional claims.

as to any material fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56(c); *Karpinsky v. Am. Nat'l Ins. Co.*, 109 So. 3d 84, 88 (¶9) (Miss. 2013). To rebut a motion for summary judgment, the nonmovant may not "rest upon the mere allegations or denials of his pleadings . . . ." M.R.C.P. 56(e). Rather, the nonmovant must respond "by affidavit or as otherwise provided in [Rule 56]," and he "must set forth specific facts showing that there is a genuine issue for trial." *Karpinsky*, 109 So. 3d at 88 (¶10). We review the grant of summary judgment de novo. *Id.* at (¶9).

¶6.   Rulings on motions for leave to amend a complaint and discovery-related motions are reviewed for abuse of discretion. *Elliott v. AmeriGas Propane L.P.*, 249 So. 3d 389, 398 (¶38) (Miss. 2018).

## DISCUSSION

### I.   Express Warranty

¶7.   Lindsey argues that Ford Motor Company and Country Ford breached the terms of the vehicle's express warranty because the vehicle's transmission was defective.

¶8.   The express warranty, as explained by Ford Motor Company, was a "repair or replace warranty." It stated that Ford would repair or replace parts that malfunction or fail due to manufacturing defects. Thomas Messerly and Christopher Groh, field-service engineers for Ford Motor Company, inspected the vehicle in March 2014. The inspection report states, "Test drove vehicle with customer on a route of his choosing to demonstrate concerns." Messerly, who had been employed with Ford for approximately twenty-three years, provided

4

an affidavit stating that "[d]uring the test drive, no transmission concerns or issues occurred. The transmission and braking functioned properly as designed and as expected. . . . The concerns identified by Plaintiff are described as a normal characteristic in the PowerShift 6-Speed Transmission Operating Characteristics." Ford Motor Company submitted documentation that the vehicle was engineered with a six-speed transmission designed to "drive, sound, and feel like a manual transmission but without the driver interaction" for better fuel economy. Lindsey does not challenge Messerly's qualifications to make these findings, and he presented no evidence in rebuttal as required by Rule 56(e).

¶9. Because Lindsey presented no evidence that the vehicle had manufacturing defects or that his complaints were not part of the normal function of the vehicle, summary judgment was appropriately granted on his express-warranty claim.

## II. Opportunity to Repair

¶10. Even if the vehicle were proved defective, Lindsey's claims still fail because he has not given Ford Motor Company or Country Ford an opportunity to repair the vehicle. The only remedy Lindsey seeks is a refund of the vehicle's purchase price. However, before a buyer is entitled to a refund of a vehicle's purchase price, the manufacturer must be given a reasonable opportunity to cure the alleged defect. Miss. Code Ann. § 63-17-159(1) (Rev. 2013); *Mercury Marine v. Clear River Const.* Co., 839 So. 2d 508, 512 (¶13) (Miss. 2003).

¶11. Section 63-17-159(1) states:

> If the manufacturer or its agent cannot conform the motor vehicle to any applicable express warranty by repairing or correcting any default or condition

5

which impairs the use, market value, or safety of the motor vehicle to the consumer *after a reasonable number of attempts*, the manufacturer shall give the consumer the option of having the manufacturer either replace the motor vehicle with a comparable motor vehicle acceptable to the consumer, or take title of the vehicle from the consumer and refund to the consumer the full purchase price, including all reasonably incurred collateral charges, less a reasonable allowance for the consumer's use of the vehicle.

(Emphasis added). A "reasonable number of attempts" is presumed to have occurred if the vehicle has been subject to repairs three or more times within a year of purchase of the vehicle or if the vehicle is out of service by reason of repair for a total of fifteen or more working days within the first year after purchase. Miss. Code Ann. § 63-17-159(3)(a)-(b). Further, it is an affirmative defense under this section that "[a]n alleged nonconformity does not impair the use, market value or safety of the motor vehicle . . . ." Miss. Code Ann. § 63-17-159(2)(a).

¶12. It is undisputed that neither Ford Motor Company nor Country Ford were given at least three attempts to repair the alleged defects. Further, there was no allegation that the alleged defects impaired the use or market value of the vehicle or put the vehicle out of service for fifteen or more days. Although Lindsey said he felt unsafe in the vehicle, there was no evidence that the issues complained of actually affected the vehicle's safety.

¶13. In *Fitzner Pontiac-Buick-Cadillac Inc. v. Smith*, 523 So. 2d 324 (Miss. 1988), the plaintiff sought a refund of the purchase price of a vehicle from a car dealership after the vehicle began to experience transmission and other mechanical problems. The Mississippi Supreme Court found that the plaintiff was not entitled to a refund because he failed to give

6

the seller an opportunity to cure the defects; rather, the only remedy the buyer was willing to accept was a refund of the purchase price. *Id.* at 328.

¶14.    Lindsey did provide the vehicle for inspection at Ford Motor Company's request. Lindsey asked that the inspection be done at a location other than Country Ford, and Ford Motor Company complied and held the inspection at Dobbs Ford in Memphis, Tennessee. The inspection occurred on March 4, 2014, and took less than two hours.[3] It was completed by service engineers Messerly and Groh. They found that the vehicle operated normally.

¶15.    At Lindsey's deposition in February 2013, he testified that he had recently taken the vehicle to a Ford dealership for an oil change. When he complained that the vehicle was not functioning properly, the dealership performed a recalibration as part of a normal update. Lindsey could not say whether the recalibration had resolved the issues. Country Ford's sales manager, Terry Pierce, stated in his affidavit that "Country Ford was willing and able to diagnose any mechanical issues had Lindsey allowed Country Ford to do so." Pierce stated he asked Lindsey to accompany him on a test drive of the vehicle on April 19, 2012, but Lindsey refused and left in the vehicle. And Ford Motor Company offered prior to and at Lindsey's deposition to attempt to repair the vehicle to resolve any remaining issues. Lindsey did not accept the offers. This issue is without merit.

---

[3] Although the inspection took less than two hours, Lindsey's vehicle remained at Dobbs Ford for the next nine days. Lindsey stated that after Groh test drove the vehicle with Lindsey, Lindsey was asked to leave his keys in the vehicle and wait inside. Groh, Messerly, Country Ford's attorney, and Ford Motor Company's attorney then took the vehicle for another drive. This upset Lindsey, and he left. He picked up the vehicle on March 13, 2014.

### III. Fraud or Misrepresentation

¶16. Lindsey asserts that issues with the vehicle were intentionally withheld or misrepresented at the time of purchase, despite his wife specifically asking, "[W]hat's wrong with this car?" "The duty to disclose is based upon a theory of fraud that recognizes that the failure of a party to a business transaction to speak may amount to the suppression of a material fact which should have been disclosed and is, in effect, fraud." *Holman v. Howard Wilson Chrysler Jeep Inc.*, 972 So. 2d 564, 568 (¶9) (Miss. 2008).

#### 1. Vehicle Allegedly Misrepresented as New

¶17. Lindsey argues that Country Ford represented the vehicle as new, but it was actually used as evidenced by the lack of a "Monroney sticker"[4] and door-well sticker. He also argues the date of delivery of the vehicle was falsified.[5] "Representing that goods are original or new if they are reconditioned, reclaimed, used, or secondhand" is a violation of

---

[4] Automobile manufacturers are required by federal statute to affix a sticker, referred to as a "Monroney sticker," to every new vehicle's windshield or side window before the vehicle is delivered to a dealer. *In re Nissan Antitrust Litig.*, 577 F. 2d 910, 916-17 (5th Cir. 1978) (citing 15 U.S.C. § 1231, et seq. (The Monroney Act)). The sticker must list, among other information, "(a) the make, model, and serial or identification number or numbers; (b) the final assembly point; [and] (c) the name, and the location of the place of business, of the dealer to whom it is to be delivered . . . ." 15 U.S.C. § 1232. While a manufacturer can be fined for failure to comply with 15 U.S.C. § 1232, this section does not create a private right of action. *Reiff v. Don Rosen Cadillac-BMW Inc.*, 501 F. Supp. 77, 80 (E.D. Pa. 1980).

[5] Lindsey also argues for the first time on appeal that the vehicle was allegedly used because there was no owner's manual in the vehicle or warranty guide provided. We do not consider this argument because "issues not presented to the trial judge are procedurally barred from being raised for the first time on appeal." *Ridgway Lane & Assocs. Inc. v. Watson*, 189 So. 3d 626, 631 n.4 (Miss. 2016) (internal quotation mark omitted).

Mississippi's Consumer Protection Act. Miss. Code Ann. § 75-24-5(2)(f) (Rev. 2016).

¶18. At Lindsey's request, Ford Motor Company provided documentation that the vehicle was shipped directly from Ford Motor Company to Country Ford. The documentation listed the truck driver's name who delivered the vehicle and the truck and trailer numbers. Lindsey's name is the only name that appears on the bill of sale. The title Lindsey received for the vehicle showed the previous owner as "MSO," or manufacturer's statement of origin. Country Ford sales manager Terry Pierce and salesman Aaron Williams stated through affidavits that the vehicle was new when Lindsey purchased it. Lindsey has presented no proof that the documentation is incorrect.

¶19. Further, Lindsey's claim that the delivery date of the vehicle was falsified was explained by an Autonation Ford employee. The documentation provided by Ford Motor Company states that manufacturing was completed on February 12, 2012, and the vehicle was delivered to Country Ford on February 15, 2012. When the vehicle was serviced at Autonation in March 2014, Lindsey was given a service invoice that stated, "DEL. DATE[:] 02JAN12 DD." Lindsey claims that this shows the vehicle was previously sold on January 2, 2012, prior to being delivered to Country Ford on February 15, 2012. Autonation's service manager Ed Stock submitted an affidavit stating that when it services a vehicle purchased at another dealership, Autonation does not know the date of delivery. For these vehicles, it used a default date of January 2, 2012, on the invoice. Lindsey has not submitted any proof to rebut Stock's statement that the January 2, 2012 date was arbitrary and did not

9

indicate that delivery of the vehicle actually occurred on that date.

¶20. Lindsey also claims that a door-well sticker was not on the vehicle when he purchased it but that a falsified sticker was placed in the door well prior to his picking up the vehicle at Autonation. There is no support for this assertion. Pierce testified at his deposition that a manufacturer's sticker was in the door well, and a photograph of the sticker was presented as an exhibit. The sticker reads, "MFD. BY FORD MOTOR CO.[;] DATE: 02/12."

¶21. Lindsey also argues that the vehicle was no longer new because it had been test driven. He argues that because the vehicle had been test driven, it was a demonstrator or loaner vehicle, and it was fraud for Country Ford to represent the vehicle as new. A "[n]ew motor vehicle" is "a motor vehicle which has not been previously sold to any person except a distributor or wholesaler or motor vehicle dealer for resale." Miss. Code Ann. § 63-17-55(d) (Rev. 2012). Ford Motor Company submitted the affidavit of Chuck Nelms, the executive director of the Mississippi Motor Vehicle Commission, stating that a vehicle is not considered used by virtue of its being test driven. Also, Pierce stated that the vehicle had not been used for demonstration purposes prior to Lindsey's purchase. Lindsey has presented no evidence to the contrary.

¶22. Lindsey also states that he financed the vehicle as new, but the credit union that processed the loan required that he redo the paperwork for the loan because the credit union learned that the vehicle was used. But this is unclear from Lindsey's deposition testimony.

10

He states the credit union or underwriter received "papers . . . from Country [Ford saying] it was used." Lindsey admits he "never did see the paper." When asked about his understanding of why the loan paperwork needed to be redone, Lindsey stated, "Well, the car wasn't valued at what it was, and what they wanted me to know was if something happened to this car, the way it was written up, I couldn't get full coverage for that car." No documentation or affidavits have been submitted in support of Lindsey's claim that any paperwork showed the vehicle was used. This argument is without merit.

### 2.     Vehicle Allegedly Previously Wrecked

¶23.    Second, Lindsey alleges that the vehicle was previously wrecked before he purchased it. He states that he saw blood inside the vehicle and dust between the front door and fender on the passenger side, and that it was not explained to him why the vehicle was "in the shop" on April 4, 2012, the day Lindsey purchased it. However, Country Ford presented evidence that the vehicle was in the shop for pre-delivery inspection on April 4, 2012. Again, all the evidence presented showed that the vehicle was new when purchased by Lindsey. Lindsey has provided no proof to support his allegations to the contrary, and he has provided no evidence of the alleged wreck or blood in the vehicle. This issue is without merit.

### 3.     Odometer Allegedly Incorrect

¶24.    Finally, Lindsey asserts the vehicle's odometer was not recording mileage. Lindsey stated that when he began his test drive of the vehicle, the odometer read twenty miles. He stated that he and his wife test drove the vehicle for approximately twenty-eight miles, but

11

the odometer still read twenty miles. Despite alleging that he knew this, Lindsey nonetheless purchased the vehicle. Lindsey has presented no evidence that the odometer was incorrect other than his own affidavit. Further, Lindsey's wife signed a statement certifying that the odometer correctly read twenty miles at the time of purchase. The odometer was checked during Lindsey's deposition, and it read 7,598 miles. Because no evidence has been presented of any misrepresentation or that the odometer was not working, and any malfunction was known to Lindsey before he purchased the vehicle, this issue is without merit.

### IV. Motions to Amend the Complaint and for Additional Discovery

¶25. Decisions to grant or deny "motions for leave to amend complaints are left to the sound discretion of the trial court." *Elliott*, 249 So. 3d at 398 (¶38). Likewise, rulings on discovery-related motions are reviewed for an abuse of discretion. *Stanley v. Scott Petroleum Corp.*, 184 So. 3d 940, 942 (¶5) (Miss. 2016).

¶26. Lindsey moved to amend his complaint on April 28, 2017, one day after Country Ford moved for summary judgment and approximately two weeks after the hearing on Ford Motor Company's summary-judgment motion. He also sought to compel additional discovery. At that point, the case had been pending for nearly five years. When the circuit judge asked why he had not attempted to amend the complaint sooner, he cited "personal problems," such as a back injury he suffered in 2015 and his wife's medical issues. Mrs. Lindsey submitted an affidavit stating that she had medical issues from October 2015

12

through January 2016. Regardless, this does not explain the delay from 2012 to 2017.

¶27. Further, it is unclear how Lindsey's case would benefit from an amendment to the complaint or additional discovery. Lindsey did not submit a proposed amended complaint, and he only stated the amended complaint would be more specific than the original complaint because "when [he] researched, [he] found out things that [he] didn't have in there . . . ." Further, Lindsey does not state what additional discovery he seeks other than what has already been provided. We cannot find the circuit court abused its discretion in denying Lindsey's motion for leave to amend the complaint or for additional discovery.

¶28. The circuit court's grant of summary judgment in favor of Ford Motor Company and Country Ford is affirmed.

¶29. **AFFIRMED.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., CARLTON, FAIR, WILSON, WESTBROOKS AND TINDELL, JJ., CONCUR. GREENLEE, J., NOT PARTICIPATING.**

13