Lucille Berry appeals from a judgment entered by the Lee Circuit Court on February 6, 2007, refusing to set aside a settlement agreement Berry ("the employee") had entered into with her former employer, H.M. Michael, Inc., d/b/a Salsa Blues Restaurant ("the employer"), in settlement of a workers' compensation claim. We affirm.
 Background
On February 24, 2005, the employee sued the employer, alleging, among other things, that she had been bitten by a dog on or about February 24, 2004, while working in the line and scope of her employment; that, as a result of the dog bite, she had suffered an injury to her right arm; that the injury had arisen out of and in the course of her employment with the employer; that the employer had been given "timely and/or actual notice" of the alleged February 24, 2004, injury; and that she had suffered a permanent disability as a result of the injury. The employee subsequently amended her complaint to reflect *Page 3 
that her injury had occurred on or about February 24, 2003.
The record reflects that, on or about August 8, 2006, the parties mediated the case before an "ombudsman," pursuant to Ala. Code 1975, § 25-5-290, and that, as a result of that mediation, the parties entered into a settlement agreement regarding all pending issues, i.e., permanent partial disability/permanent total disability, vocational disability, vocational rehabilitation, and future medical payments. Pursuant to the agreement, the parties agreed that the employer's workers' compensation insurance carrier ("the insurance carrier") would pay the employee a "compromise lump sum settlement of $2,543.00 . . . in full and final settlement of all permanent partial disability, permanent total disability, vocational disability, and vocational rehabilitation," that future medical payments would remain open as provided under the Workers' Compensation Act, § 25-5-1
et seq., Ala. Code 1975, that past medical payments would be closed, and that Dr. Caudill Miller, a Montgomery neurologist, would be the employee's authorized treating physician.
On October 6, 2006, the employee filed a motion to set aside the settlement agreement. As grounds for her motion, the employee alleged that the insurance carrier had denied her the medical benefits to which she was entitled under the settlement agreement, that Dr. Miller "had refused and/or failed to treat her, and/or refused and/or failed to refer her to any other physician for . . . treatment," and that the employer had not paid her medical bills as promised. The employee's motion was supported by a copy of the settlement agreement and her own affidavit.
On December 26, 2006, the employer filed a motion to enforce the settlement, denying the statements made in the employee's motion to set aside the settlement agreement, and asserting that, pursuant to Ala. Code 1975, § 25-5-292, the settlement agreement was binding because the employee had not produced "evidence of fraud, new evidence, or other good cause" to justify setting aside the settlement agreement. The employer denied that it or the insurance carrier had improperly failed to pay the employee's past medical bills because, it argued, under the settlement agreement, all past medical payments were closed. The employer also denied that it or its insurance carrier had improperly refused to authorize payment for the employee to see a neurologist other than Dr. Miller; the employer asserted that, under the terms of the settlement agreement, the employee had agreed that Dr. Miller would be her authorized treating physician. The employer also denied that the employee had not been provided appropriate medical care. The employer asserted that the case manager who had been assigned to the employee's case had repeatedly tried to set up appointments for the employee with Dr. Miller but that the employee had refused to visit the doctor during regular business hours.
Following ore tenus proceedings held January 5, 2007, and the submission of briefs by the parties, the trial court entered an order on February 9, 2007, concluding that "[the employee] has not been denied medical treatment, [and,] at best, scheduling errors were made." As a result, the trial court denied the employee's motion to set aside the settlement agreement. The employee filed a motion to alter, amend, or vacate the judgment on March 8, 2007; that motion was denied by operation of law on June 6, 2007.
The employee appeals, arguing that the trial court erred in refusing to set aside the parties' settlement agreement and in refusing to "review" the settlement agreement. *Page 4 
 The Hearing
At the January 5, 2007, hearing, the employee testified that the employer and/or the insurance carrier had not provided her the medical benefits to which she was entitled under the settlement agreement. The employee testified that she had sought medical treatment from Dr. Miller, the authorized treating physician, on several occasions but that the insurance carrier had refused to make appointments for her. The employee claimed that she had had an appointment scheduled for August 31, 2006, and that she had shown up for that appointment on that date, only to learn that "work comp" had not approved her appointment.[1] She was upset that she had made an unnecessary trip to Montgomery and that she had not been allowed to see the physician on that date.
The employee also testified that she had requested a referral to another neurologist who was located closer to the Auburn/Opelika area so that she would not have to travel to Montgomery but that the insurance carrier would not approve treatment from any other physician. The employee also complained because, shortly after entering into the settlement agreement, she had obtained new employment and her only "off day was Friday. She requested doctor's appointments on Friday afternoons but learned that Dr. Miller's office did not accept appointments at that time.
The employee also alleged that Dr. Miller had diagnosed her condition as "chronic," which, she argued, constituted newly discovered evidence. However, the employee admitted that the other four physicians she had seen regarding her dog-bite injury all agreed with Dr. Miller's conclusion that surgery was not indicated to treat her injury. It was also undisputed that payment of the employee's future medical expenses remained open under the terms of the settlement agreement.
Lori LeFevre testified that she had been contacted on August 10, 2006, by the insurance carrier to serve as the medical case manager on the employee's case. LeFevre testified that she had gathered the employee's medical records and had provided those records to Dr. Miller, who had been authorized to provide medical treatment to the employee under the parties' settlement agreement. According to LeFevre, Dr. Miller was to determine what medical treatment was appropriate for the employee's injury. LeFevre testified that she had scheduled the employee for an appointment with Dr. Miller for August 18, 2006, and that she had notified the employee's attorney of that appointment. The employee's attorney notified LeFevre that the employee could not attend that appointment; LeFevre canceled the appointment with Dr. Miller and rescheduled it for August 31, 2006.
The employee's attorney then informed LeFevre that the employee was available for doctor's appointments only on Friday afternoons. LeFevre informed the employee's attorney that Dr. Miller did not see patients on Friday afternoons because his office closed at noon on Fridays. LeFevre then canceled the August 31, 2006, appointment. LeFevre and the employee's attorney, along with the employer's attorney, exchanged telephone calls and messages back and forth until early November 2006, at which time LeFevre learned that the employee was again prepared to accept an appointment with Dr. Miller. LeFevre then scheduled the employee to see Dr. Miller on November 21, 2006. *Page 5 
Before the November 21 appointment occurred, the employee's attorney notified LeFevre that the employee's injury required emergency care. LeFevre authorized an emergency-room visit to evaluate the employee's condition. The following day the employee visited the emergency room, but no life-threatening condition was found.
After the emergency-room visit, the employee communicated to LeFevre that she did not have reliable transportation to Montgomery for the scheduled November 21 appointment with Dr. Miller. The employee requested that she be referred to another physician in the Lee County area. LeFevre informed the employee that LeFevre had no authority to approve another physician and that the settlement agreement authorized treatment only by Dr. Miller. LeFevre arranged for a car service to drive the employee from her home in the Auburn/Opelika area to Montgomery for the appointment with Dr. Miller.
On November 21, 2006, the employee was driven to Montgomery by the car service. LeFevre met the employee at Dr. Miller's office. According to LeFevre, Dr. Miller determined that the employee did not require further tests, that she did not need to be evaluated by an orthopedic surgeon, that she needed no further diagnostic studies, and that she had a "chronic soft tissue problem as a result of the [dog] bite." LeFevre testified, without objection, that Dr. Miller had indicated that "it was a matter of trying to make [the employee] more comfortable with the problem that she had with the soft [tissue] injury; that no surgery would correct it." Dr. Miller gave the employee samples of a medication to try and asked LeFevre to follow up with the employee in three to four weeks. Dr. Miller told the employee he would see her whenever she felt it was necessary, if she had any problems, or if her medication needed adjustment.
LeFevre spoke with the employee on December 12, 2006, at which time the employee indicated that she had discontinued her medication because of side effects. The employee did not wish to return to Dr. Miller for a follow-up appointment at that time. LeFevre indicated that she had told the employee that if she changed her mind to let LeFevre know. At the time of the hearing, no further appointments had been scheduled.
 Analysis
In Ex parte Ford, 782 So.2d 185 (Ala. 2000), the Alabama Supreme Court stated:
 "[I]n 1992, the Alabama Legislature provided for an `Ombudsman Program to assist injured or disabled employees . . . in protecting their rights and obtaining information available under the Workers' Compensation Law.' Ala. Code 1975, § 25-5-290(a). One of the features of the Ombudsman Program is the `benefit-review conference,' which is a `nonadversarial, informal dispute resolution proceeding' conducted by an ombudsman trained in dispute mediation. Ala. Code 1975, § 25-5-291; see § 25-5-290(e)[, Ala. Code 1975]. The parties may enter into settlement agreements at the benefit-review conference. See
§ 25-5-292(a, b)[, Ala. Code 1975]. A settlement agreement made at the benefit-review conference is `effective on the date the settlement is signed unless one of the parties submits the settlement to the court for approval as provided in this article [i.e., Article 11 of chapter 5 of Title 25, the article of the Workers' Compensation Act providing for the Ombudsman Program].' § 25-5-292(a); see also § 25-5-290(f)(2)[, Ala. Code 1975]. Section 25-5-292(b) further provides that a settlement agreement entered *Page 6 
into at a benefit-review conference is `binding on all parties through the final conclusion of all matters relating to the claim, unless within 60 days after the agreement is signed or approved the court on a finding of fraud, newly discovered evidence, or other good cause, shall relieve all parties of the effect of the agreement.'"
782 So.2d at 187.
In this case, the settlement agreement between the employee and the employer was executed as a result of a benefit-review conference, conducted pursuant to § 25-5-290(e). That settlement agreement was entered on August 8, 2006, and the employee's motion to set aside the settlement agreement on the basis of fraud, newly discovered evidence, or other good cause was filed on October 6, 2006. Because the employee's motion to set aside the settlement agreement was filed less than 60 days after the agreement was signed, her motion was timely presented to the trial court. We thus look to the merits of the employee's motion.
We first address the employee's argument that the trial court erred by not setting aside the settlement agreement. The employee argues that she presented substantial evidence of fraud and/or newly discovered evidence. In cases in which a trial court has denied a motion to vacate or set aside a judgment approving a workers' compensation settlement, this court has said, "the trial court had a discretion to exercise in the grant or refusal of the relief requested and its judgment will not be reversed on appeal except for an abuse of discretion." Erwin v. Harris, 459 So.2d 928, 931
(Ala.Civ.App. 1984). We recognize the differences between a settlement mediated by an ombudsman and a settlement approved by the court, most notably that the latter actually has the same effect as any other civil judgment. See Ala. Code 1975, § 25-5-56. Nevertheless, we find that the similarities between a motion to vacate or set aside a judgment approving a workers' compensation settlement and a motion to vacate or set aside a settlement mediated by an ombudsman justify similar appellate treatment. Therefore, we conclude that a trial court has discretion in deciding whether to grant or deny a motion to vacate or set aside a settlement agreement mediated by an ombudsman and that its judgment will not be reversed on appeal unless the trial court has exceeded its discretion.
Based on the evidence presented at the hearing, we find no error in the trial court's ruling that the settlement agreement should not be vacated or set aside due to fraud. A movant seeking to vacate or set aside a settlement agreement on the basis of fraud must reasonably satisfy the trial court that the nonmovant made some misrepresentation of material fact that reasonably induced the movant to enter into the settlement agreement. See Erwin, 459 So.2d at 931. In this case, the employee did not even attempt to prove that the employer or its agents had made any misrepresentation of material fact that had induced her to agree to the settlement. She simply argued that, after she had entered the settlement agreement, she had been denied the promised medical treatment.
Moreover, the evidence demonstrated that the employee has not been denied the medical treatment to which she agreed in the settlement. As found by the trial court, the employee has experienced, at most, scheduling difficulties that delayed her treatment by Dr. Miller. Additionally, the employee requested treatment by a different doctor despite her agreement to see Dr. Miller. Based on the evidence, the trial court could have reasonably concluded *Page 7 
that the employee had failed to meet her burden of proving fraud.
We also find that the employee's claim of newly discovered evidence is without merit. The movant seeking to set aside a settlement agreement on the ground of newly discovered evidence has the burden of proof on that issue. See Gallups v.United States Steel Corp., 353 So.2d 1169
(Ala.Civ.App. 1978). "Newly discovered" evidence is not "new" evidence, but refers to evidence in existence at the time of the settlement of which the movant was unaware despite his or her due diligence. See Wal-Mart Stores, Inc. v. Pitts,900 So.2d 1240, 1245 (Ala.Civ.App. 2004). The employee claims that the settlement agreement should be set aside on the ground of newly discovered evidence because, she says, she did not learn that her dog-bite injury was "chronic" in nature until after Dr. Miller's post-settlement examination. However, the employee does not assert that evidence of the permanency of her injury was in existence at the time the parties entered into the settlement agreement or that she could not have discovered the lasting nature of her injury through due diligence at that time. Therefore, we find that the trial court did not exceed its discretion in denying the motion on the ground of newly discovered evidence.
The employee next argues that "the trial court certainly abused its discretion for failing to review andapprove the parties' settlement agreement." (Emphasis added.) She argues that, "[i]n order to approve . . . the settlement agreement, the court must find that the agreement is in [the employee's] best interest pursuant to § 25-5-83," Ala. Code 1975. We note that a settlement agreement mediated by an ombudsman at a benefit-review conference is reviewed by a trial court only if a party submits a request to the trial court for approval within 60 days of signing such an agreement.See Ex parte Ford, 782 So.2d at 187.
We acknowledge that the employee made a request in her affidavit for the "[c]ourt to review this case and assist me with my rights under the law." However, it is clear from the motion she filed with the trial court that the employee's affidavit statement constituted an application to review the case to determine if the settlement agreement should be set aside due to fraud and/or newly discovered evidence. The employee did not submit her settlement agreement to the trial court for approval. At no point in her motion to set aside the settlement agreement, in her affidavit, or at the hearing did the employee petition the trial court to approve the substance of the settlement agreement based on the best-interests standard set out in § 25-5-56 and § 25-5-83. "This Court cannot consider arguments raised for the first time on appeal; rather, our review is restricted to the evidence and arguments considered by the trial court."Andrews v. Merritt Oil Co., 612 So.2d 409, 410 (Ala. 1992). Because this argument was not presented to the trial court, it is not properly before this court and we cannot address it.
The trial court's judgment is affirmed.
AFFIRMED.
PITTMAN, BRYAN, and THOMAS, JJ., concur.
THOMPSON, P.J., concurs in the result, without writing.
[1] The employee claimed that she had received a telephone call on August 30, 2006, from Dr. Miller's office confirming her August 31, 2006, appointment with that office. *Page 8