# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-CA-00497-COA

JOSHUA ADAMS                                                                APPELLANT

v.

MBA FOUNDATION D/B/A MISSISSIPPI                          APPELLEE
BASKETBALL & ATHLETICS

DATE OF JUDGMENT:              03/02/2018
TRIAL JUDGE:                          HON. JEFF WEILL SR.
COURT FROM WHICH APPEALED:    HINDS COUNTY CIRCUIT COURT,
                                      FIRST JUDICIAL DISTRICT
ATTORNEYS FOR APPELLANT:      DENNIS C. SWEET III
                                      DENNIS CHARLES SWEET IV
ATTORNEYS FOR APPELLEE:       CRANE D. KIPP
                                      REX MORRIS SHANNON III
NATURE OF THE CASE:             CIVIL - PERSONAL INJURY
DISPOSITION:                      REVERSED AND REMANDED - 06/04/2019
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**McDONALD, J., FOR THE COURT:**

¶1.     Joshua Adams appeals the Hinds County Circuit Court's order that reversed a Hinds County County Court's judgment granting him an extension of time to serve process on Mississippi Basketball & Athletics (MBA). The circuit court also granted MBA's summary judgment motion and dismissed the case on statute of limitation grounds. Finding that the circuit court abused its discretion, we reverse.

## FACTS AND PROCEDURAL HISTORY

¶2.     On May 4, 2014, Adams was working as a referee during a basketball tournament held

at MBA's facility. Adams and Justin Griffin, a basketball coach, had an argument that escalated into a more serious altercation in the parking lot. As a result of the fight, Griffin suffered a head injury that sadly caused his death two days later.

¶3. Adams contends that he also suffered severe injuries as a result of the altercation. Adams filed a complaint on May 1, 2017— three days prior to the running of the three-year statute of limitations—against MBA; Mississippi Boys Hoops Inc.; and Amateur Athletics Union, alleging negligent hiring, retention, and supervision or control of Griffin.

¶4. On May 10, 2017, Adams filed a motion to transfer the case to circuit court and argued he inadvertently wrote "county court" instead of "circuit court" on the complaint because his damages exceeded the county court's jurisdictional limits of $200,000.

¶5. Prior to a ruling on the motion to transfer, Adams served two of the three defendants.[1] But Adams had difficulty serving MBA. According to the Secretary of the State's website, MBA's registered agent was Jeffery Lewis, whose address was 105 Kenilworth Place, Ridgeland, Mississippi. Adams's process server made six attempts to serve MBA within 120-days, but neither Lewis nor anyone else answered the door. On the 121st day, August 30, 2017, Adams filed a motion for an extension of time to serve MBA and stated the following in his Motion:

> Plaintiff's process server **has tried serving the defendant on numerous occasions. Despite diligent efforts, Plaintiffs process server has not been able to effectuate process on Defendant.**

(Emphasis added).

---

[1] Mississippi Boys Hoops Inc. was served on June 14, 2017. Amateur Athletics Union was served on June 27, 2017.

¶6.   The county court granted the motion on September 11, 2017, stating:

> This matter came before the Court on the Plaintiff's Motion For Extension of Time To Serve Process on the defendants in this cause, and the Court, **after considering said motion**, finds that it is well taken and should be granted.

(Emphasis added).  Plaintiff was given an additional 120-days to serve MBA.

¶7.   On October 10, 2017, Plaintiff had the Madison County Sheriff's Office attempt service on Lewis at the address listed on the Secretary of State's website.  But the deputy was also unsuccessful.

¶8.   On October 24, 2017, the county court transferred the case to the circuit court.

¶9.   Finally, on November 17, 2017, Lewis was served by a private process server, Terrell Wells, at the MBA facility in Jackson where Lewis worked.

¶10.   On December 12, 2017, MBA filed a motion in the circuit court to set aside the county court's order granting Adams an extension of time to serve process upon MBA and for summary judgment based upon its statute of limitations defense.  MBA asserted it was entitled to summary judgment because Adams failed to show good cause for an extension of time to serve MBA and that Adams's claims were therefore time barred.  MBA argued that Adams provided no facts and did not submit any affidavits or other evidentiary support with his motion when it was filed in the county court.[2]

¶11.   Adams filed a response to MBA's motion to set aside the order and for summary judgment on December 30, 2017.  Adams provided the affidavit of Terrell Wells, the process

---

[2] "Good cause" is required for the granting of an extension of time after the initial 120-days to serve process has expired.  *See* M.R.C.P. 4(h).  Notably, MBA has provided no authority that affidavits are required when seeking an extension of time to serve process past the 120-days.

server, who stated that he attempted to serve MBA on more than six occasions at the address listed for the registered agent on the Secretary of State's website. Wells's affidavit also mentioned vehicles were in the driveway, but no one answered the door. Additionally, Adams provided the circuit court with documentation dated October, 10, 2017, from the Deputy Sheriff of Madison County, Randall Tucker, who stated he too was unable to serve MBA at that address.

¶12. A hearing was held on MBA's motion to set aside the county court's order granting Adams's motion for an extension of time and for summary judgment. The circuit court found that the county court's order should be set aside, and MBA's motion for summary judgment was granted on the ground of statute of limitations.

¶13. Adams timely appealed to this Court.

**STANDARD OF REVIEW**

¶14. This Court looks for abuse of discretion when reviewing a ruling court's decision on whether to set aside an order granting an extension of time. *Copiah Cty. Sch. Dist. v. Buckner*, 61 So. 3d 162, 166 (¶12) (Miss. 2011); *Booth v. Williams*, 200 So. 3d 1053, 1057 (¶11) (Miss. Ct. App. 2016). "This Court leaves to the discretion of the trial court the finding of fact on the existence of good cause or excusable neglect for delay in serving process under Rule 4(h)." *Buckner*, 61 So. 3d at 166 (¶12). Further, our courts "will reverse if the trial court's discretion was abused or its decision was not supported by substantial evidence." *Id.* at 166 (¶12). Moreover, "we review the grant or denial of a motion for summary judgment de novo, viewing the evidence in the light most favorable to the party against whom the

4

motion has been made." *Karpinsky v. Am. Nat. Ins. Co.*, 109 So. 3d 84, 88 (¶9) (Miss. 2013).

## DISCUSSION

### I. Whether the circuit court abused its discretion by setting aside the county court's 120-day extension of time.

¶15. This case is unique because it involves the rulings of two trial courts in the pre-trial stages of a case. The county court granted Adams's motion for extension of time. When the case was transferred, the circuit court set aside the county court's ruling finding that Adams failed to establish good cause to extend the time for service of process. Adams raises two issues on appeal: (1) whether he demonstrated good cause for failing to serve MBA within 120-days and (2) whether the county court's ruling is the "law of the case." We find that the circuit court abused its discretion regarding whether Adams demonstrated good cause for the extension of time. Our resolution of the first issue renders discussion of the "law of the case" argument unnecessary.

¶16. Mississippi Rule of Civil Procedure 4(h) states:

> **Summons: Time Limit for Service.** If a service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint and the party on whose behalf such service was required cannot show good cause why such service was not made within that period, the action shall be dismissed as to that defendant without prejudice upon the court's own initiative with notice to such party or upon motion.

M.R.C.P. 4(h).[3]

¶17. Although it is preferred that a plaintiff petition the court for an extension of time prior to, rather than after, the expiration of the 120-day period, this failure is not fatal to the action

---

[3] Adams's motion was filed one day after 120 days had passed.

because "a motion for extension of time may be filed after the 120-day time period has expired." *Darville v. Mejia*, 184 So. 3d 312, 317 (¶16) (Miss. Ct. App. 2016). After the expiration of the 120-days, "an extension of time to serve process continues to toll the statute of limitations only if granted for good cause." *Heard v. Remy*, 937 So. 2d 939, 943 (¶5) (Miss. 2006). The burden is on the plaintiff to demonstrate good cause for a failure to serve process in a timely manner. *Buckner,* 61 So. 3d at 166 (¶14). "To establish 'good cause' the plaintiff must demonstrate at least as much as would be required to show excusable neglect, 'as to which simple inadvertence or mistake of counsel or ignorance of the rules usually does not suffice.'" *Id.* at 166 (¶14). "To meet the burden of proof of good cause, the plaintiff must demonstrate that a diligent effort was made to effect timely service." *Id*. at 166 (¶14). Additionally, the supreme court has held that good cause exists in these instances:

> [W]hen the failure is a result of the conduct of a third person; when the defendant has evaded service of process or engaged in misleading conduct; when the plaintiff has acted diligently; when there are understandable mitigating circumstances; or when the plaintiff is proceeding pro se or in forma pauperis.

*Foss v. Williams*, 993 So. 2d 378, 379 (¶6) (Miss. 2008).

¶18. The circuit court found that Adams failed to meet his burden of good cause because: (1) the affidavit provided was not specific and did not include the requisite factual information; (2) there was no evidence that Lewis was home when service was attempted or that he deliberately evaded service; and (3) there was no evidence explaining why attempts were made at the single location of Lewis's home. As mentioned above, our supreme court has held that there are alternative instances in which good cause can exist. *Foss*, 993 So. 2d

6

at 379 (¶5). These instances are noted disjunctively rather than conjunctively; therefore, there is no requirement that one prove more than one instance for a showing of good cause.[4] After analyzing the facts and the law, we find that the circuit court erred in failing to find good cause for the extension of time. This court finds that Adams acted diligently in his efforts to serve MBA.

### a. Whether the motion and order included "good cause" language.

¶19. Before addressing why the circuit erred it is imperative to note that Adams's motion for extension of time properly included "good cause" language. Although Adams's motion for an extension of time to serve MBA did not specifically state the words "good cause," it used the language of good cause when it stated that the process server made "diligent efforts" to serve MBA. *Foss*, 993 So. 2d at 379 (¶5) (finding that good cause can be demonstrated by a plaintiff's diligent efforts to serve the defendant). The motion stated that "Plaintiff's process server has tried serving the defendant on numerous occasions. Despite diligent efforts, Plaintiff[']s process server has not been able to effectuate process on Defendant." Therefore, the county court properly found good cause when it incorporated the motion with its order "after considering said motion [this Court] finds that it is well taken and should be granted."

¶20. The dissent relies upon *Heard*, 937 So. 2d at 944 (¶21), for the support that the circuit court was correct when it found that Adams failed to show good cause because the county

---

[4] The circuit court as well as the dissent requires more for a showing of "good cause" than our supreme court requires.

7

court's order did not address the issue of good cause. In *Heard*, the plaintiff filed a motion for an extension of time after the initial 120-days had expired and the trial court granted the motion like in this case. *Id.* at 940 (¶3). But the *Heard* plaintiff never attempted service within the initial 120-day period as was done in the present case. *Id.* at 944 (¶20). "The trial court granted heard an additional 60 days within which to serve process, but it did not make any findings as to whether Heard had shown good cause for her failure to serve." *Id.* at 940 (¶3). The order specifically stated:

> IT IS HEREBY ORDERED, ADJUDGED AND DECREED, that the Plaintiff, is hereby granted an additional 60 days from the date of entry of this order within which to serve process on the defendant. . . .

The order in *Heard* made absolutely no finding of good cause and is inapposite to the case at bar. *Id.*

**b.      Whether supporting evidence has to be attached to a motion.**

¶21.    The dissent also repeatedly recites that Adams had not attached any affidavit or evidence to his motion for an extension of time. Yet, the dissent cites no caselaw holding this. Mississippi Rule of Civil Procedure 4(h) does not establish a requirement of a supporting affidavit to establish good cause unlike Rule 56 for the purposes of a summary judgment motion. Neither the comment nor the case law require an affidavit to be filed with a motion for an extension of time.

¶22.    Furthermore, Adams's diligent efforts consisted of six separate attempts to serve MBA at the registered agent's listed address on the Secretary of State's website prior to the expiration of the 120-day deadline. Adams provided this information to the circuit court

when it considered MBA's motion to set aside and summary judgment. Adams's affidavit provided:

> I made attempts between May 1, 2017 until August 29, 2017, to serve Jeffrey Lewis, Registered Agent for MBA, whose address with the Secretary of State is listed at 105 Kinelworth Place, Ridgeland, MS, on more than six occasions. There were vehicles in the driveway each time that I attempted to serve Mr. Lewis, but there was never an answer at the door.

Therefore, this concern has no barring on whether Adams showed good cause.

### c. Whether Adams's affidavit lacked specific dates.

¶23. The circuit court's first error was finding no good cause because Adams's affidavit did not list specific dates. The circuit court stated that "the affidavit . . . provides no information regarding specific dates or the times of day when service was attempted . . . [i]n the absence of requisite factual information, the Court finds that these documents do not constitute requisite evidence of good cause [pursuant to *Stutts v. Miller*, 37 So. 3d 1 (Miss. 2010)]." We disagree.

¶24. *Stutts* does not lend support to the circuit court or the dissent's argument. In *Stutts*, the court never required the affidavits to contain specific dates; the court simply noted the efforts by plaintiff to obtain service. *Id*. at 5 (¶13). The fatal flaw in *Stutts* was that the plaintiff failed to request even one extension. *Id*. at 4 (¶11). The supreme court found a lack of diligence when plaintiffs fail to file a motion for an extension of time. *Id*. at 6 (¶16).

¶25. Unlike the plaintiff in *Stutts*, Adams showed diligence by filing a motion for an extension of time merely one day after the initial 120-days. Also, Adams's affidavit provided the specific time range when service was attempted within the initial 120-days (between May

1, 2017 and August 29, 2017). The dissent narrates a host of possibilities pertaining to whether service was attempted in the beginning, middle or end of the initial 120 days and even wonders what time of the day the service was attempted. This speculation by the dissent overlooks the important undisputed fact that service was attempted on six different occasions at MBA's registered agent's address provided on the Mississippi Secretary of State's website within the initial 120-days deadline.

### d. Whether evidence provided that the defendant was home or evading service of process.

¶26. Second, the circuit court erred when it concluded that good cause was not shown because Adams failed to provide evidence that Lewis, the registered agent (1) was home when his process server attempted service, or (2) that Lewis deliberately evaded service, *citing Ogunbor v. May*, 204 So. 3d 840, 847 (¶32) (Miss. Ct. App. 2016). Although Adams argued that MBA evaded service of process at the hearing before the circuit court and in his brief, Adams was not required to show that MBA's registered agent was evading service of process because that is only one of the several alternative instances where the supreme court has recognized good cause. *Foss*, 993 So. 2d at 379 (¶5). Good cause can also be shown if a plaintiff has acted diligently, as we find that Adams has. *Id.* at 379 (¶5).

### e. Whether failure to attempt service at more than one location shows "no good cause."

¶27. Lastly, the circuit court stated Adams failed to show good cause because service was only attempted at Lewis's home. The cases cited by the circuit court as well as the dissent provide poor support for its conclusion that in order to show good cause one must attempt

service at more than one location, *citing Ogunbor v. May*, 204 So. 3d 840, 847 (¶31) (Miss. Ct. App. 2016); *Young v. Hooker*, 753 So. 2d 456, 461 (¶20) (Miss. Ct. App. 1999).

¶28.   In *Ogunbor*, the plaintiff argued good cause existed because the defendant was evading service of process. *Ogunbor*, 204 So. 3d at 846 (¶27).  This Court did not hold that a plaintiff must attempt service of process at more than one location in order to show good cause. *See id.* at 847 (¶31).  Rather, this Court found that Ogunbor failed to provide any evidence of evading. *Id. Ogunbor* is therefore distinguishable from the case at bar which exemplifies good cause due to diligent efforts as opposed to good cause because a defendant was evading service of process.

¶29.   *Young* can be distinguished from the case at bar.  In *Young*, the plaintiff did not request an extension of time to serve the defendant. *Young*, 753 So. 2d at 458 (¶3). The plaintiff attempted to serve the defendant only twice, then "gave up." *Id*.  The defendant told someone to inform the plaintiff where he could be served, yet service was never attempted. *Id.* at 459 (¶6).  Mutual acquaintances of the parties testified that they could have easily located the defendant for plaintiff.  Although the plaintiff was aware of persons with information regarding the whereabouts of the defendant, he never sought out such information.  Therefore, because the plaintiff could have easily found the defendant and failed to request an extension of time, there was no good cause shown.

¶30.   In the present case, Adams requested and was granted an extension of time to serve MBA.  The record does not provide substantial evidence that MBA's registered agent's whereabouts were known, should have been known, or could have been known to Adams.

11

Nothing in the record shows that Adams knew Lewis or people that associated with Lewis. The only evidence provided is that Lewis was ultimately served at his workplace where the incident occurred. Generally, the agent for service of process is not found at the site where the cause of action accrued. There is no record evidence that MBA's registered agent's whereabouts were known, should or even could have been known. Therefore, *Young* is not on point.

### f. Whether good cause was shown.

¶31. This case is analogous to *Darville v. Mejia*, 184 So. 3d 312 (Miss. Ct. App. 2016), and *Jenkins v. Oswald*, 3 So. 3d 746 (Miss. 2009).

¶32. In *Darville*, the plaintiff had difficulty locating the defendant and filed four motions for an extension of time to serve the defendant. *Darville*, 184 So. 3d at 317 (¶17). The plaintiff's third motion is relevant to this opinion. The third motion for an extension of time "not[ed] extensive efforts to locate the defendant," "but to no avail[,]" and the ruling court denied the motion. *Id.* at 316 (¶14). On appeal, this Court considered Darville's efforts since the filing of his complaint. *Id*. at 317 (¶17). For a period of almost two years—April 26, 2012 to February 25, 2014—Darville attempted to serve the defendant, sent certified summons to several addresses, subpoenaed the defendant's driving records, completed a social security number search, attempted to serve the defendant through his insurance company, and submitted service of process to the Mississippi Secretary of State's Office which defendant responded to. *Id*. at 316-17 (¶¶ 2, 14, 17). This Court reversed the trial court and found that the plaintiff's efforts were diligent and constituted good cause. *Id*. at

318 (¶19). Darville may have made more efforts but it was over the course of two years, four times as long as Adams.

¶33. In *Jenkins*, the defendant was served almost five years after the initial filing of the complaint and plaintiff failed to file a motion for extension of time. *Jenkins*, 3 So. 3d. at 747 (¶2). In nearly five years, the plaintiff's efforts consisted of an attempted service at the defendant's Mississippi address, an inquiry with the United States Postal Service about any new mailing address for the defendant, an attempted service at the defendant's Florida address, internet searches, and contact with the Secretary of State's Office for the defendant's business address where service was effectuated. *Id*. at 747-48 (¶¶4-5). The ruling court stated that the plaintiff was making "some diligence, or at least reasonably diligent efforts" and denied the defendant's motion to quash service of process and dismiss the action. *Id*. at 749 (¶11). Our supreme court affirmed. *Id*. at 750 (¶16). Again, there may have been more efforts, but these efforts were made over the course of nearly five years, as opposed to Adams's efforts in 120 days.

¶34. Here, Adams filed his complaint on May 1, 2017, and MBA was served within six months. Within the initial 120 days, Adams's process server made six diligent attempts to serve MBA by going to its registered agent's address listed on the Mississippi Secretary of State's website. There was no need for Adams to perform an internet search because MBA's registered agent's address is undisputed. In fact, in MBA's answer it conceded, "[it] may be served with process by service upon its registered agent, Jeffery Kelley, 105 Kenilworth Place, Ridgeland, Mississippi, 39157. . . ." After six unsuccessful attempts,

13

Adams filed a motion for extension of time only one day after the 120-day requirement had passed. Traveling under an order granting Adams an additional 120 days, Adams diversified his efforts. On October 10, 2017, Adams attempted to serve MBA through the Madison County Deputy Sheriff's office, but to no avail. Finally, on November 17, 2017, Lewis was served at the MBA facility. Adams attempted three different methods to serve MBA and one of those methods included six attempts within 120 days.

¶35. We find that Adams "demonstrat[ed] at least as much as would be required to show excusable neglect." *Buckner*, 61 So. 3d at 166 (¶14). This was not a case of "simple inadvertence or mistake of counsel or ignorance of the rules[,]" but this was a case of diligent efforts made by a plaintiff to serve the defendant which demonstrates good cause. *Id*. at 166 (¶14). As before mentioned, our supreme court has held that there are alternative ways to show good cause. *Foss*, 993 So. 2d at 379 (¶5). Accordingly, Adams showed good cause through his diligent efforts and the circuit court abused its discretion in setting aside the county court's order that granted his motion for an extension of time to serve MBA.

## II. Whether the circuit erred in granting MBA's summary judgment motion.

¶36. The grant or denial of a motion for summary judgment is reviewed de novo, viewing the evidence in the light most favorable to the party against whom the motion has been made." *Karpinsky*, 109 So. 3d at 88 (¶9). After the expiration of the 120 days, if good cause is shown an extension of time to serve process continues to toll the statute of limitations. *Heard*, 937 So. 2d at 943 (¶5) ("Where good cause is shown for an extension of time to serve process, and process is served within the time allowed, the statute of limitations will be tolled

14

during the extension period."). Because we find that Adam's showed good cause for his extension of time to serve MBA, the statute of limitations was tolled. Thus, the circuit court also erred when granting MBA's motion for summary judgment.

CONCLUSION

¶37. This Court finds that Adams met his burden of showing "good cause" under Mississippi Rules of Civil Procedure 4(h). For the reasons stated, we find that the circuit court abused its discretion in setting aside the county court's order and granting MBA's motion for summary judgment. Therefore, we reverse and remand this case to the circuit court in accordance with this opinion.

¶38. **REVERSED AND REMANDED.**

**BARNES, C.J., GREENLEE, WESTBROOKS, TINDELL, LAWRENCE AND McCARTY, JJ., CONCUR. CARLTON, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY J. WILSON, P.J., AND C. WILSON, J.**

**CARLTON, P.J., DISSENTING:**

¶39. Applying the deferential standard of review as required here, I dissent because I cannot find that the circuit court abused its discretion in setting aside the county court's ex parte order granting Adams's motion for an extension of time within which to serve his complaint on MBA. I further find no error in the circuit court's decision to grant summary judgment in MBA's favor.

**I.    Good Cause**

¶40. As detailed in the majority's opinion, on May 4, 2014, Adams was working as a referee in a basketball tournament at MBA's facility when he was involved in an altercation

15

with a basketball coach. Adams subsequently sued MBA and others for negligence-based claims arising out of injuries he allegedly incurred during that incident. Adams filed his complaint on May 1, 2017, just three days before the governing three-year statute of limitations period ran.[5] Under Rule 4(h) of the Mississippi Rules of Civil Procedure, Adams had 120 days after the filing of his complaint within which to serve MBA. In this case, Adams did not effectuate service on MBA within this 120-day period, nor did he move for additional time until after the 120-day time period had expired. Under these circumstances, "an extension of time to serve process continues to toll the statute of limitations only if granted for good cause." *Heard*, 937 So. 2d at 943 (¶5).

¶41. "We review a trial court's decision on whether to set aside an order granting an extension of time for abuse of discretion." *Buckner*, 61 So. 3d at 165 (¶12). With respect to a trial court's "good cause" determination under Rule 4(h), the Mississippi Supreme Court has consistently recognized that "[a] trial court's finding of fact on the existence of good cause for the delay in service of process has been deemed a discretionary ruling . . . and entitled to deferential review." *Fulgham v. Jackson*, 234 So. 3d 279, 282 (¶9) (Miss. 2017) (internal quotation mark omitted); *Jenkins v. Oswald*, 3 So. 3d 746, 750 (¶13) (Miss. 2009). "With regard to these fact-findings, our review is limited to determining only whether the trial court abused its discretion and whether there was substantial evidence supporting the determination." *Fulgham*, 234 So. 3d at 282 (¶9) (internal quotation mark omitted); *Heard*,

---

[5] The parties do not dispute that the general three-year limitations period under Mississippi Code Annotated section 15-1-49 (Rev. 2012) applies to Adams's negligence-based claims against MBA and the other defendants.

16

937 So. 2d at 944 (¶21).

¶42. The plaintiff bears the burden to demonstrate good cause for failure to serve process within the 120-day service period provided by Rule 4(h). *Montgomery v. SmithKline Beecham Corp.*, 910 So. 2d 541, 545 (¶12) (Miss. 2005); M.R.C.P. 4(h). In order to meet this burden, Adams was required to present substantial evidence "that a diligent effort was made to effect timely service." *Buckner*, 61 So. 3d at 166 (¶14).

¶43. The record reflects that after failing to serve MBA within 120 days of filing his lawsuit, Adams filed a motion in the county court for an extension of time to serve MBA. As grounds for seeking this extension, Adams's motion provided that "Plaintiff's process server has tried serving the defendant on numerous occasions. Despite diligent efforts, Plaintiff's process server has not been able to effectuate process on Defendant." No supporting evidence was attached to the motion.

¶44. The county court granted the motion, ex parte, on September 14, 2017, ten days after the statute of limitations expired. There is no indication in the record that the county court held a hearing on the motion or that any evidence had been submitted in support of the motion. In its one-page order, the county court did not address the issue of good cause or make any finding of "good cause," as required by the applicable case law. *See, e.g.*, *Heard*, 937 So. 2d at 944 (¶21).[6]

---

[6] In its order, the county court stated that "after considering [Adams's] motion, [the court] finds that it is well taken and should be granted." The majority believes this constitutes a finding of "good cause" because Adams's motion stated that his process server used "diligent efforts" to attempt service. I do not agree with this assessment. Adams submitted no evidence at all to the county court in support of any "diligent efforts" he, his counsel, or the process server took to effectuate service within the applicable 120-day time

17

¶45. As reflected in the record, on November 17, 2017, 200 days after filing his lawsuit, and seventy-seven days after the statute of limitations expired, Adams served process on MBA's registered agent, Jeffery Lewis, at his workplace and at MBA's principal place of business, the MBA complex in Jackson, where the underlying events giving rise to the lawsuit occurred. MBA moved to (1) set aside the county court's order granting an extension of time to serve MBA based upon Adams's failure to show "good cause" for his delayed service of process; and (2) for summary judgment because Adams's lawsuit against it was time-barred.

¶46. In response to MBA's motion to set aside the county court's ex parte order, Adams relied upon the affidavit of his process server as evidence of his efforts to effect service on MBA during the initial 120-day service period. Adams's process server stated that during this 120-day period (from May 1 to August 29, 2017), he attempted service on Lewis at the address listed on the Secretary of State's website. The transcript of the hearing on the motion to set aside the county court's order reflects that this address was Lewis's home address. The process server's affidavit provides that attempts at service at Lewis's home address were made "on more than six occasions" and that there were "vehicles in the driveway each time[,]... but there was never an answer at the door." Other than stating that these attempts took place between May 1 and August 29, 2017, there were no specified dates or times in the process server's affidavit evidencing when these attempts at service occurred.

¶47. Adams also submitted a Sheriff's return from the Madison County Sheriff's Office,

period allowed under Rule 4(h).

18

reflecting attempted service on Lewis on October 10, 2017—after the 120-day period for service of process had already expired. The return did not reflect where service had been attempted and only provided the following: "Multiple attempts. Won[']t answer door." Adams presented no other evidence in responding to MBA's motion to set aside the county court's order.

¶48. As an initial matter, I find no error in the circuit court's determination that it would not consider the sheriff's return that reflected attempted service on Lewis on October 10, 2017. Adams was required to show good cause for failing to serve MBA *within the initial 120-day service period*; October 10, 2017, is outside that 120-day period. *See Montgomery*, 910 So. 2d at 545 (¶12); M.R.C.P. 4(h).

¶49. The only other "good cause" evidence that Adams presented was his process server's affidavit in which the process server described his six attempts to serve Lewis at his home address. The circuit court found that the lack of information in the process server's affidavit regarding specific dates or the times of day when service was attempted upon Lewis at his residence made the affidavit insufficient evidence of good cause. I find no abuse of discretion in this determination. *See Stutts v. Miller*, 37 So. 3d 1, 5 (¶¶13, 16) (Miss. 2010) (lack of pertinent factual information in the affidavits offered by plaintiff to support "good cause" was referred to by the supreme court as one reason for its finding that the trial court did not abuse its discretion in ruling that the plaintiff failed to show good cause for not timely serving defendants).[7] Without specific dates and times, there was no way for the circuit court

---

[7] The majority's reading of *Stutts v. Miller* appears to be that the supreme court did not consider the lack of specificity in the plaintiff's "good cause" affidavits when it found

19

to assess whether service was diligently pursued. For example, attempting service early in the 120-day period, and attempting service at various times of day, may have indicated a diligent effort was made. But here, there is no indication when the process server began attempting service—did he begin as soon as the 120 days began running, did he wait until the final days of the 120-day period, or did he attempt service at some point in between? Nor could the circuit court determine what time the process server repeatedly attempted to serve Lewis at his home. Was it the same time of day, or did he try different times throughout the day and evening or different days of the week? The process server's affidavit contained none of this pertinent factual evidence.

¶50.   In determining that Adams failed to show good cause for his delay in serving MBA, the circuit court found it relevant that Adams presented no evidence that during the 120-day period any attempt was made to serve Lewis at his workplace and MBA's principal place of business—the MBA complex in Jackson, where the underlying events of this lawsuit occurred, and where service was eventually effectuated on November 17, 2017. Instead, the process server repeatedly attempted to serve Lewis at his home during the 120-day service period, and, as the circuit court observed, Adams offered no explanation why attempts at service were limited to that single location for months. I find no abuse of discretion in the circuit court's determination that this weighs against a finding of good cause, as it

_____

that the trial court did not abuse its discretion in ruling that plaintiff had failed to show good cause. With respect, I disagree. In its concluding paragraph on this issue, the supreme court referred to "the reasons previously stated" as support for its decision. *Stutts*, 37 So. 3d at 6 (¶16). I read this to include the lack of specificity in the affidavits relied upon by the plaintiff in attempting to show good cause, as "previously" described in paragraph 13 of the supreme court's decision. *Id.* at 5 (¶13).

demonstrates lack of diligence on Adams's part. *See Ogunbor v. May*, 204 So. 3d 840, 847 (¶31) (Miss. Ct. App. 2016) (finding that plaintiff failed to show good cause for failure to timely serve the defendant where the proof offered did not support a determination that the defendant evaded process, nor did the proof offered indicate that the process server ever attempted to serve the defendant anywhere other than at one location); *Young v. Hooker*, 753 So. 2d 456, 461 (¶20) (Miss. Ct. App. 1999) (finding substantial evidence supported the chancellor's finding of no good cause where defendant's "whereabouts either were known, should have been known or could have easily been known" to plaintiff).

¶51.    The majority finds that the "diligence" determination in *Darville v. Mejia*, 184 So. 3d 312 (Miss. Ct. App. 2016), supports reversal of the circuit court's decision to set aside the county court's order granting Adams an extension to serve MBA.  With respect, I do not agree.  In *Darville*, this Court held that the trial court abused its discretion in denying Darville's motions for additional time to serve Mejia based upon the following:  Darville attempted to locate Mejia "through numerous internet searches," *id.* at 317 (¶17); summonses were issued via certified mail to several addresses, *id.* at 316 (¶14); and Darville "issued subpoenas duces tecum to Tennessee and Mississippi to obtain Mejia's driving records/car license and registration, . . . and [had a search performed that] revealed that Mejia's Social Security number was linked to multiple people." *Id.* at 316-17 (¶14).  The Court further observed, "[a]s noted by Darville, 'as of this date, [Mejia] has not and [cannot] be located by [Darville], the courts, nor his own insurance carrier, UAIC.'" *Id.* at 318 (¶18).

¶52.    In contrast to the facts in the case before us, *Darville* is wholly distinguishable, and

21

I do not find it instructive. The only evidence before the circuit court in this case was that Adams's process server tried to serve Lewis six times at home during the 120-day period. The circuit court had no specific information about dates or time, nor was there any evidence of searches made during the 120-day period for other locations where Lewis may be found. Further, process was ultimately effectuated (out-of-time) once the individual served Lewis with process at his workplace—a location that "should have been known or could have easily been known" to Adams because it was also MBA's principal of business and the location where the alleged incident occurred. *See Young*, 753 So. 2d at 461 (¶20). Under these facts, I find that the trial court was within its discretion in finding that Adams did not show good cause for failing to timely serve MBA and in setting aside the county court's ex parte order.

¶53. The circuit court also found that Adams "presented no evidence that [Lewis] was actually home when service was attempted or that he deliberately evaded service, thereby precluding a finding of good cause on this basis [(i.e., that Lewis "dodged" process)]." The majority discounts this finding because avoiding service is just one alternative for supporting a "good cause" determination. I agree that proof of a defendant evading service is just one alternative for supporting a "good cause" determination, and that the supreme court has recognized several alternative instances where good cause exists. *See, e.g.*, *Foss*, 993 So. 2d at 379 (¶6). I address this factor, however, because Adams argued this basis at the hearing before the circuit court and, in his appellant's brief, Adams asserts that "there is evidence that [Lewis] avoided service of process because [there were] cars parked in front of the house yet no one would answer the door." I find no abuse of discretion in the circuit court's

determination that this information, alone, does not constitute a showing that Lewis evaded process. *See Ogunbor*, 204 So. 3d at, 847 (¶30); *Moore ex rel. Moore v. Boyd*, 799 So. 2d 133, 136-37 (¶¶11-12) (Miss. Ct. App. 2001).

¶54.     As noted above, the circuit court's ruling on the "good cause" issue is a "discretionary ruling . . . and entitled to deferential review." *Fulgham*, 234 So. 3d at 282 (¶9) (internal quotation mark omitted).  Based upon this deferential standard, the record before us, and the applicable case law, I cannot say that the circuit court abused its discretion in ruling that Adams failed to meet his burden of establishing good cause for his failure to timely serve MBA and in setting aside the county court's ex parte order on this basis.  Adams's efforts do not constitute the requisite substantial evidence that he was diligent in attempting to serve Lewis, nor did Adams present substantial evidence that Lewis avoided process. I would, therefore, affirm the circuit court's decision on this point.

## II.     "Law of the Case"

¶55.     Adams asserts that the circuit court committed reversible error in overturning the county court's ruling because that ruling established the controlling "law of the case."  The majority did not address this argument because its resolution on the "good cause" issue rendered unnecessary a discussion of the "law-of-the-case" issue.  Because I find that the circuit court's ruling on the good cause issue should be affirmed, I also discuss Adams's "law-of-the-case" argument.

¶56.     The "law-of-the-case" doctrine does not apply to the county court's ex parte order granting Adams more time to serve MBA, and thus I find Adams's "law-of-the-case"

argument without merit. The "law-of-the-case" doctrine generally concerns the preclusive effect of an appellate decision on subsequent proceedings in the same case involving the same issues and facts—not an interim ruling like the county court's ex parte order. *See Lee v. Thompson*, 167 So. 3d 170, 177 (¶18) (Miss. 2014) ("If a second appeal involves the same issues and the same facts as a prior appeal, the law established in the prior appeal ordinarily applies under the law of the case doctrine."); *Holcomb v. McClure*, 217 Miss. 617, 621, 64 So. 2d 689, 691 (1953) ("[T]he rule in this State is that the law of the case as established on a first appeal will normally and ordinarily control on later trials and appeals of the same case involving the same issues and facts."); *see generally*, 5 Am. Jur. 2d Appellate Review § 522 at 360 (2018) ("The doctrine of the law of the case generally prohibits reconsideration of issues which have been decided by the same court, or a higher court, in a prior appeal in the same case.").[8] In short, the county court's ruling is not the "law of the case" because "[t]he law-of-the-case doctrine requires a dispositive, final ruling on a question of law. . . . And the law-of-the-case doctrine has no applicability where the order or judgment is not of a final character." *Elliott v. AmeriGas Propane L.P.*, 249 So. 3d 389, 399-400 (¶46) (Miss. 2018). The county court's ex parte order was not a final, dispositive ruling. Under Rule 54 of the

---

[8] The cases cited by Adams in support of his "law-of-the-case" argument likewise concern the effect of an *appellate* decision on subsequent proceedings in the same case. *See Simpson v. State Farm Fire & Cas. Co.*, 564 So. 2d 1374, 1376 (Miss. 1990) (addressing whether *Simpson I* was the "law of the case" in *Simpson II*, or whether exceptions to that doctrine applied), *abrogated on other grounds by Upchurch Plumbing Inc. v. Greenwood Utils. Comm'n*, 964 So. 2d 1100 (Miss. 2007); *Miss. Coll. v. May*, 241 Miss. 359, 366, 128 So. 2d 557, 558 (1961) ("Appellants seek on this appeal to reopen the same issues which the Court has already decided in the first appeal. This we refuse to do for two reasons, because the original decision was correct, and because it is the law of the case.").

Mississippi Rules of Civil Procedure, the county court's ex parte order was subject to revision at any time before entry of judgment "adjudicating all the claims and the rights and liabilities of all the parties." Based upon these authorities, I find no error in the circuit court's rejection of Adams's "law-of-the-case" argument.

### III. Summary Judgment

¶57. I further find no error in the circuit court's decision to grant summary judgment in MBA's favor based upon its determination that Adams's claims against MBA were time-barred. The circuit court's ruling on this issue was based upon its legal determination that the statute of limitations had lapsed. This finding of law is reviewed de novo, and we will reverse only "if the law has been applied or interpreted erroneously." *Young*, 753 So. 2d at 461 (¶¶16, 18); *see Buckner*, 61 So. 3d at 166 (¶12). I do not find that to be the case here. When a plaintiff fails to serve process on a defendant within the 120-day service period under Rule 4(h), "the statute of limitations automatically begins to run again when that period expires." *Triple C Transp. Inc. v. Dickens*, 870 So. 2d 1195, 1199-1200 (¶34) (Miss. 2004) (quoting *Holmes v. Coast Transit Auth.*, 815 So. 2d 1183, 1185 (¶7) (Miss. 2002)). "A plaintiff who does not serve the defendant within the 120-day period must either re-file the complaint before the statute of limitations ends or show good cause for failing to serve process on the defendant within that 120-day period; otherwise, dismissal is proper." *Holmes*, 815 So. 2d at 1185 (¶7); *see Estate of Puckett v. Clement,* 238 So. 3d 1139, 1147 (¶22) (Miss. 2018); *Buckner*, 61 So. 3d at 166 (¶13); *Dickens*, 870 So. 2d at 1200 (¶34).

¶58. In this case, when Adams filed his complaint on May 1, 2017, only three days

remained on the governing statute of limitations. At this point the limitations period was tolled for 120 days and resumed running on August 30, 2017, with three days remaining. Because Adams failed to re-file his complaint or show good cause for an extension of time to serve MBA, the statute of limitations expired on September 1, 2017, ten days before the county court entered its order granting an extension on September 11, 2017, and seventy-seven days before Adams effectuated service on MBA on November 17, 2017. Because the statute of limitations period had expired at the time the county court's order was set aside, Adams's claims against MBA are time-barred, and the circuit court properly granted summary judgment to MBA. *See Buckner*, 61 So. 3d at 171 (¶32); *Heard*, 937 So. 2d at 944 (¶23); *Booth v. Williams*, 200 So. 3d 1053, 1064 (¶38) (Miss. Ct. App. 2016).

¶59. In sum, based upon the record before us, controlling precedent, and our deferential standard of review, I find that the circuit court did not abuse its discretion in finding that Adams failed to meet his burden of establishing good cause. I further find that the circuit court did not err in granting summary judgment in MBA's favor based upon its determination that Adams's claims against MBA were time-barred. Because the majority reaches a different conclusion, I respectfully dissent.

**J. WILSON, P.J., AND C. WILSON, J., JOIN THIS OPINION.**

26